The plaintiff, called one Klutts, the sheriff of Rowan County, who stated, that on the 3rd of March, 1855, the defendant placed in his hands a warrant, sued out by him, which is as follows:
"To any lawful officer, to execute and return forthwith: Whereas, information hath been made to me, John I. Shaver, one of the justices of said County, on the oath of Thomas M. Crawford, that he has great reason, and does believe, from what he has heard, that one Wm. Brockway, or some such man, has been guilty of horse-stealing from one Mr. McLeod, of Charlotte. This theft was done in the last three days, against the statutes," c., with the usual mandate to arrest, signed by the magistrate, with the addition of J. P., but, having no seal, nor scroll representing a seal, and requested him to arrest the plaintiff under it. The witness and defendant had some conversation on the subject, when the latter said he had been advised by Mr. Kerr (a lawyer) as to his liability for suing out the warrant, and that, under the circumstances, it was a dangerous proceeding; but that he had been informed by Mr. McLeod, a brother of the owner of the horse, that the plaintiff had been at the Huie mine, in Mecklenburg, about the time the horse was stolen, and that he bore a close resemblance in dress and personal appearance to a man calling himself Clary, who was suspected of stealing the horse; that Mr. Calvin S. Brown had been to Charlotte since, and procured a description of the man Clary, which closely resembled the plaintiff, and he believed he was the man. He stated that other persons (not lawyers) had advised that the circumstances would justify the arrest; among them, D. A. Davis, a justice of the peace of the County. He also said a reward of one hundred dollars had been offered for the apprehension of the thief. He said that Mr. McLeod, the owner of the horse, requested him to arrest the plaintiff. After which, the witness told the plaintiff if he went to serve the *Page 435 
warrant, he, defendant, must go with him; to which he agreed. Upon which, he, the defendant, and several other persons (summoned for that purpose) proceeded to the "Rymer Mine," five or six miles below Salisbury, where the plaintiff was arrested. This was in the night time. He was brought immediately before a justice of the peace, at Salisbury, and discharged for the want of evidence of his guilt.
The Court adjudged, on inspection of the instrument, that there was no seal to the warrant.
The defendant called on one McLeod, who said that, in February, about the 22nd, his brother had a horse stolen from him in Charlotte; that suspicion fell upon a man calling himself Clary; that he went to the Huie Mine, eighteen miles from Charlotte, in search of Clary, when he learned that the plaintiff had been there, and bore a resemblance, in dress and appearance, to Clary. The witness then described the dress, c., of Clary, and it was admitted that there was a strong resemblance to the plaintiff, as he was dressed at and before the arrest; that he immediately proceeded to Salisbury; had an interview with defendant, and informed him of the fact of the horse having been stolen; that suspicion attached to a man calling himself Clary, and pointed to the marks of resemblance between Clary and the plaintiff. He also stated to defendant that the plaintiff had been at the Huie Mine about the time the theft was committed, and requested the defendant to go with him to the Rymer Mine, on that night, to have the plaintiff arrested, and the defendant declined doing so.
It also appeared in evidence, that after the interview with Mr. Kerr, and after the conversation with Mr. McLeod, Mr. C. S. Brown, a citizen of Salisbury, who had been to Charlotte, upon his return, informed the defendant that he had conversed with several respectable citizens of Charlotte upon the subject, and they described to him the appearance and dress of the man Clary, which description, Mr. Brown gave in his evidence, and which, it was conceded, bore a close resemblance to the plaintiff. Mr. Brown further told defendant *Page 436 
that Clary was suspected of the felony by persons whom he saw in Charlotte, and that he, witness, had no doubt in his own mind, that plaintiff was the same person, and guilty of the larceny, and advised him to proceed to the arrest. It was after this that defendant had an interview with Mr. Davis, who advised him to make the arrest; that the evidence justified him in applying for the warrant.
Mr. Shaver, the justice of the peace who issued the warrant, testified that the defendant made a full disclosure to him of the facts above stated, as having come to his knowledge before taking out the warrant, and expressed his confident belief that Clary and Brockway were the same person. Mr. Shaver also testified as to the resemblance in dress, person,c.
The defendant's counsel asked the Court to instruct the jury, that although the warrant was without a seal, and therefore invalid, still, if the sheriff had reason to believe that the felony had been committed by the plaintiff, he was authorised to make the arrest without a warrant, and to summon the defendant to assist him in so doing, and that so, the defendant was justified in what was done.
The Court was further asked to charge, that if the felony had actually been committed, and that the defendant had reasonable ground for believing that plaintiff was the felon, as a private individual, he was justified in making the arrest, and, therefore, not liable in this action, though the warrant was void for the want of a seal.
The Court declined giving these instructions, and charged the jury that the plaintiff was entitled to recover, if the evidence were true; that the warrant conferred no authority to make the arrest, and, that although the plaintiff bore a resemblance to a man representing himself as Clary, who was suspected of the theft, yet no reasonable grounds for that suspicion appeared in evidence, and there were no facts proved which would justify the arrest of said Clary without a warrant, and, of course, none to justify the arrest of the plaintiff.
Defendant excepted to this charge. Verdict for $200 and judgment for plaintiff. Defendant appealed. *Page 437 
It concerns the public that all who commit felonies should be punished; hence, compounding a felony is a misdemeanor, and the law encourages every one, as well private citizens as officers, to keep a sharp look-out for the apprehension of felons, by holding them exempt from responsibility for an arrest, or prosecution, although the party charged turns out not to be guilty, unless the arrest is made, or the prosecution is instituted, without probable cause and from malice.
In our case actual malice was not alleged, and the main question was the existence of probable cause.
Had a seal been affixed to the warrant of the justice of the peace, so as to compel the plaintiff to sue in case, for a malicious prosecution, from the evidence it is clear there could have been no question that the plaintiff had probable cause; so the amount of the case is, that by the accidental omission, on the part of the magistrate, to affix a seal after signing his name, the defendant must not only pay the cost, but is mulcted in damages to the amount of $200, without reference to the question of malice or probable cause. This result cannot be right.
Admit that the want of a seal put the warrant out of the way, and enabled the plaintiff to sue in trespass for the false imprisonment, so as to be entitled, without more showing, to nominal damages, yet, surely, he could only entitle himself to actual damages, on the ground that the defendant had acted maliciously and without probable cause; so, the want of a seal ought only to have affected the form of action, whereby to subject the defendant to nominal damages and costs, leaving the merits of the case to turn on the question of probable cause.
In regard to this, we take a different view from that entertained by his Honor; we think there was some evidence tending to show probable cause. On the 22nd of February, *Page 438 
1855, a horse, the property of one McLeod, is stolen in the town of Charlotte; thus we have a felony committed; suspicion rests upon a man named Clary, who is seen and heard of no more. A brother of McLeod goes to the Huie Mine, eighteen miles from Charlotte, in search of Clary, and is there informed that a man calling himself Brockway had been at the mine about the time the horse was stolen; "the description of the clothes and the personal appearance, resembled Clary very closely." Mr. McLeod was so well satisfied that he was the same man, that he pursues on to Salisbury. A reward of one hundred dollars is, in the meantime, offered for the apprehension of the felon. In Salisbury, McLeod meets with the defendant; gives him a full account of the felony; of Clary's being suspected, and having absconded; of the advertisement; of the fact that a man calling himself Brockway (who, in dress and personal appearance, closely resembled the man Clary,) had been at the Huie mine about the time the horse was stolen, and was then, as he learned, at the Rymer mine, about six miles from Salisbury, and asks the defendant to go that night with him, and have the said Brockway arrested, and brought before a justice of the peace for examination. The defendant hesitates; but Calvin S. Brown arrives from Charlotte; he had procured a description of Clary, and confidently expresses the belief that the plaintiff is the man. Esquire D. A. Davis and Esquire John I. Shaver, upon these pregnant proofs, as they were supposed to be, on all hands, expressed their opinion that Brockway was the man Clary, passing under an alias; whereupon he is arrested that night; but without any kind of oppression or delay, he is forthwith brought before a magistrate, and there being no proof that he is the man, is accordingly discharged.
What has the plaintiff (if he be a good citizen,) to complain of? A felony is committed, and the felon escapes; he is advertised, and a reward of one hundred dollars is offered for his apprehension. The plaintiff bears a close resemblance, both in dress and personal appearance, to the suspected person; his associations and fixedness in his position as amember *Page 439 of the community, do not place him above the marks of honest suspicion which attach to him because of the close resemblance to the man who figures under the reward of one hundred dollars, as a fugitive from justice. Has he cause to complain? Ought he not rather to congratulate himself that he lives in a land where justice is administered with a steady hand. And if occasionally "the wrong passenger is waked up," every good citizen should bear in mind that it was meant for the best, and will work around for the good of the whole.
Samuel v. Paine, Doug. 359; Beckwith v. Philby, 6 B. and C. 635; Davis
v. Russell, 5 Bing. 354, are cases of the highest authority, showing that, upon proof much short of that offered by the defendant in our case, the Courts in England hold, that an officer or a private individual may justify the arrest of a suspected person for the purpose of bringing him before a committing magistrate, provided there be proof that a felony has been committed. Much might be said as to the effect of our bill of rights upon the ex-officio powers of a sheriff or constable, who acts without warrant, and when there is no immediate apprehension that an escape will be attempted before one can be obtained from a justice of the peace. But a discussion of this matter is not now called for.