[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10550
Non-Argument Calendar
_____

D.C. Docket No. 9:08-cv-80134-DTKH

FANE LOZMAN,

Plaintiff-Appellant,

versus

CITY OF RIVIERA BEACH,
a Florida municipal corporation,

Defendant-Appellee,

MICHAEL BROWN,
an individual, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 28, 2017)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Plaintiff Fane Lozman brought suit pursuant to 42 U.S.C. § 1983 against the City of Riviera Beach, Florida ("the City") after he was arrested at a Riviera Beach City Council meeting on November 15, 2006. Lozman claimed his arrest violated the First and Fourth Amendments, and constituted a false arrest under Florida state law. The case was tried before a jury and the jury returned a verdict in favor of the City on all claims. Lozman appeals (1) the district court's denial of his motion for new trial, and (2) various instructions the district court gave the jury. After careful review, we affirm.

## I.

### A.

Lozman moved to the City in March 2006 and lived in a floating home in the Riviera Beach Marina. After moving there, Lozman learned that the City had proposed a redevelopment plan for the Marina, which sought to revitalize the City's waterfront through the use of eminent domain. While many residents opposed the plan, especially the proposed use of eminent domain, Lozman became "an outspoken critic." He attended City Council meetings in May and June 2006 at which he sharply criticized the Mayor and the Council.

While the City was finalizing its redevelopment plan, the Florida legislature passed a bill prohibiting the use of eminent domain for private development. In an effort to pass the redevelopment plan before the law went into effect, the City Council held a special emergency meeting the day before the Governor was scheduled to sign the bill into law. That evening, the City approved the redevelopment plan. On June 8, 2006, Lozman filed a lawsuit against the City under the Florida Sunshine Law, seeking to invalidate the City's approval of the redevelopment plan on the ground that the eleventh-hour meeting was convened without sufficient public notice. On June 28, 2006, the Council held a closed executive session to discuss Lozman's suit.[1] During this meeting, Councilperson Elizabeth Wade said:

> I think it would help to intimidate the same way as [the Florida Department of Law Enforcement] is coming to my house. I am wondering if my lines are tapped or whatever. I think they should be questioned by some of our people . . . so that they can feel the same kind of unwarranted heat that we are feeling . . . .

In response, another councilperson said: "I think what Ms. Wade says is right. We do have to beat this thing, and whatever it takes, I think we should do it."

---

[1] Florida law permits city councils to hold closed executive sessions for the purpose of discussing pending litigation with counsel. See Fla. Stat. § 286.011(8). Although the sessions are closed to the public, the entire session must be transcribed by a court reporter, and the transcript must be made available to the public upon conclusion of the litigation. Id. § 286.011(8)(c) & (e)

On November 15, 2006, the City Council held a regular public session. Lozman was granted permission to speak during the "non-agenda" public comments portion of the meeting.[2]  The events surrounding Lozman's comments at the meeting, and his subsequent arrest, were captured on video.  Upon reaching the podium, Lozman said, "As is typical, the Mayor and [another Councilperson] aren't here during my comments."  The Council remained silent.  Lozman proceeded: "The U.S. Attorney's Office has arrested the second corrupt local politician . . . former Palm Beach County Commissioner Tony Masilotti."  At that point, Councilperson Wade interjected, "You will not stand up and go through that kind of . . . ."  Lozman interrupted Councilperson Wade and said "Yes, I will."  Councilperson Wade responded, "No, you won't."  Lozman continued with his allegations despite Councilperson Wade's instructions.  Wade then called out "Officer," summoning City Police Officer Francisco Aguirre who was providing security for the meeting.  As Officer Aguirre approached Lozman at the podium, Lozman, speaking louder, said, "I am informing the citizens that two County Commissioners . . . ."  After walking up to Lozman, Officer Aguirre gestured to him and said "Will you walk outside with me[?]  I need to talk to you."  In response, Lozman said, "I'm not finished," and continued speaking.  Officer

---

[2] At each public meeting of the City Council, once the City Council has completed discussion of the agenda items, there is a non-agenda public comment period during which members of the public can address the Council on matters that were not on the agenda.

Aguirre then told Lozman, "You're going to be arrested if you don't walk outside." Lozman responded, "Excuse me?  I'm not walking outside, I haven't finished my comments."  Councilperson Wade then said, "Well, carry him out."  Officer Aguirre handcuffed Lozman.  Lozman yelled, "Why am I being arrested! I have a First Amendment right!"  Councilperson Wade responded, "If you go out, you won't be arrested."  After Lozman was removed from the meeting, the next person to speak was called to the podium.

Lozman was charged with disorderly conduct and resisting arrest without violence.  The state's attorney determined there was probable cause for the arrest but dismissed the charges because there was "no reasonable likelihood of successful prosecution."

## B.

In February 2008, Lozman filed a § 1983 action against the City.  Lozman claimed the City retaliated against him for opposing the City's redevelopment plan by having him arrested at the City Council meeting.  Lozman brought claims for: (1) retaliation by false arrest, in violation of the First Amendment; (2) unreasonable seizure, in violation of the Fourth Amendment; and (3) common-law false arrest.

In November 2014 the case went to trial, with Lozman proceeding pro se. Among the many instructions the district court gave the jury, Lozman challenges

two on appeal.  The first is the district court's instruction on retaliatory animus. The court instructed the jury that, in order to find the City liable for the First Amendment retaliatory arrest claim, the jury had to find that "a [City] police officer arrested [Lozman] and <u>the officer</u> was motivated to take this action because he had an impermissible animus to retaliate against Mr. Lozman for engaging in constitutionally protected speech or conduct."  (Emphasis added.)

The second instruction relevant to Lozman's appeal consists of two comments the district court made when instructing the jury on the City's authority to limit the subject matter of public comment during City Council meetings.  First, during Lozman's testimony, the court said:

> Clearly, it would not be appropriate for someone to come in and take a copy of the New York Times and just simply read the editorial section of the New York Times, that would have nothing to do with the City of Riviera Beach. . . .

Then, during the final charge, the court said:

> [I]f a chairperson [of the City Council] was saying to Mr. Lozman, Mr. Lozman, you need to sit down because we're only going to hear comments about the City of Riviera Beach, even if they didn't have that rule but if the person was doing that, exercising her discretion or his discretion as the chairperson that would <u>not</u> be discriminatory.

(Emphasis added.)

The jury returned a verdict in favor of the City on all counts.  Lozman filed a Motion for New Trial, which the district court denied.  This appeal followed.

II.

We review a district court's denial of a motion for new trial for an abuse of discretion.  Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984).  When ruling on a motion for new trial, a trial judge must determine "if in his opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice."  Id. (quotation omitted and alteration adopted).  "To assure that the judge does not simply substitute his judgment for that of the jury, . . . new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence."  Id. (quotation omitted and alteration adopted).

"We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party."  Palmer v. Board of Regents, 208 F.3d 969, 973 (11th Cir. 2000).  When reviewing a trial court's jury instruction, "our task is to examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled."  Id. (quotation omitted).  Reversal is warranted only if the failure to give an instruction prejudiced the requesting party.  Id.

III.

A.

7

Lozman first argues that the district court erred in denying his motion for new trial because the jury's verdict finding probable cause to arrest for a violation of Fla. Stat. § 871.01 was against the great weight of the evidence.[3]

Probable cause "constitutes an absolute bar" to a claim for false arrest. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).  That is true whether the false arrest claim is brought under the First Amendment, Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002), the Fourth Amendment, Rankin, 133 F.3d at 1430, 1435, or state law, id. at 1435.  Thus, for all three false arrest claims, the district court instructed the jury that, in order to find in favor of Lozman, the jury had to find that "the arresting officer lacked probable cause to believe that Mr. Lozman had or was committing a crime."  The jury was instructed, more specifically, to consider whether the officer had probable cause to arrest Lozman for the offense of Disturbing a Lawful Assembly, Fla. Stat. § 871.01(1).  By finding for the City on the three false arrest claims, the jury thus found Officer Aguirre did have probable cause to arrest Lozman for disturbing a lawful assembly under § 871.01(1).

Lozman argues the district court erred in denying his motion for new trial because the jury's finding of probable cause was against the great weight of the

---

[3] The City argues Lozman waived this claim by failing to argue in his motion for new trial that the probable cause finding was against the great weight of the evidence.  Reading Lozman's motion for new trial in light of our rule to construe pro se filings liberally, see Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), we are not convinced he waived the issue.  In any event, we need not rule on the City's waiver argument because we deny Lozman's claim on the merits.

evidence.  We disagree.  In order for probable cause to exist, "an arrest must be objectively reasonable under the totality of the circumstances." Rankin, 133 F.3d at 1435 (quotation omitted and alteration adopted).  This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quotation omitted).

To obtain a conviction under § 871.01(1), the State must prove three elements: (1) the defendant "must have deliberately acted to create a disturbance[,] [t]hat is, he must act with the intention that his behavior impede the successful functioning of the assembly in which he has intervened, or with reckless disregard of the effect of his behavior"; (2) "[t]he acts complained of must be such that a reasonable person would expect them to be disruptive"; and (3) "the acts must, in fact, significantly disturb the assembly." S.H.B. v. State, 355 So. 2d 1176, 1178 (Fla. 1977).

Based on the evidence before the jury—especially the video footage of Lozman's conduct at the City Council meeting—the jury could have found that Officer Aguirre reasonably believed Lozman was committing, or was about to commit, the offense of Disturbing a Lawful Assembly.  The video shows Lozman interrupted and refused to listen to Councilperson Wade when she tried to

9

admonish him; Lozman refused to leave the podium when Officer Aguirre first asked him to "walk outside"; and Lozman then continued to refuse to leave after Officer Aguirre again directed him to "walk outside" or else be arrested.  Because Lozman failed to heed Councilperson Wade and Officer Aguirre's directions, and repeatedly failed to leave the podium when directed to do so, Officer Aguirre could have reasonably believed: (1) that Lozman acted with "reckless disregard of the effect of his behavior"; (2) that "a reasonable person would expect [his conduct] to be disruptive"; and (3) that his conduct "significantly disturb[ed] the assembly," or was about to.  See S.H.B., 355 So. 2d at 1178.  Thus, we cannot say the jury's finding that Officer Aguirre had probable cause to arrest Lozman for a violation of § 871.01(1) went against the great weight of the evidence.

## B.

Next, Lozman argues the district court erred in its jury instruction on the First Amendment retaliatory arrest claim, specifically, the part of the instruction on retaliatory animus.  The court instructed the jury that, in order to find for Lozman on this claim, the jury had to find that Officer Aguirre possessed a retaliatory animus.  However, Lozman's theory at trial was that it was Councilperson Wade— not Officer Aguirre—who was the City official with the retaliatory animus. Lozman claimed that Councilperson Wade caused his arrest by summoning Officer Aguirre to the podium and then directing Officer Aguirre to "carry [Lozman] out."

Lozman argues he was entitled to have the jury instructed on this theory of animus and causation, and that the district court erred by instructing the jury that Officer Aguirre was the City official whose animus (or lack thereof) was dispositive of the First Amendment claim.

Lozman's argument is compelling, as he seems to have established a sufficient causal nexus between Councilperson Wade and the alleged constitutional injury of his arrest. See Rizzo v. Goode, 423 U.S. 362, 370–71, 96 S. Ct. 598, 604 (1976) ("[Section 1983] impose[s] liability . . . for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." (quoting 42 U.S.C. § 1983) (emphasis added)); Sims v. Adams, 537 F.2d 829, 831 (5th Cir. 1976)[4] ("The language of § 1983 requires a degree of causation . . . but it does not specifically require 'personal participation.'"). However, even assuming Lozman is right that it was error to restrict the jury's animus inquiry to Officer Aguirre, this error was harmless in light of the probable cause finding. See United States v. Webb, 655 F.3d 1238, 1249 n.8 (11th Cir. 2011) ("Jury instructions are subject to harmless error review."). The jury's determination that the arrest was supported by probable

---

[4] Under Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we are bound by all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

11

cause defeats Lozman's First Amendment retaliatory arrest claim as a matter of law.  See Dahl, 312 F.3d at 1236.

C.

Finally, Lozman argues the district court erred in its jury instructions about the City's authority to restrict public comment at City Council meetings.[5]

In order to prevail on a First Amendment retaliation claim, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech."  Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011).  Lozman claimed the City had him removed and arrested because he opposed the redevelopment plan.  As its defense, the City presented evidence that Lozman was removed—regardless of his opposition to the redevelopment plan—simply because his comments violated the rules governing the non-agenda public comment period of City Council meetings.  More specifically, the City argued Lozman's remarks about the arrest of a county commissioner violated the rule that comments during the non-agenda public comment period, while not limited to an agenda item, must still relate to City business.  Lozman countered with testimony showing no such requirement existed and that, during the public comment period, residents could speak on any topic,

---

[5] The City argues Lozman waived this claim by failing to argue it before the District Court.  Again, although we are not convinced that he waived the issue, see Tannenbaum, 148 F.3d at 1263, we need not rule on the City's waiver argument because we deny the claim on the merits.

whether related to City business or not.  Thus, one of the fact issues for the jury was whether a person during the public comment period could speak only about a topic related to City business.  The district court instructed the jury, both during trial and in its final charge, that the First Amendment would not prohibit a city from imposing this sort of restriction if it wanted to.

Lozman argues that two comments the district court made while offering instructions on this subject were error.  First, during Lozman's testimony, the court said, "it would not be appropriate for someone to come in [to a City Council meeting] and just simply read the editorial section of the New York Times, that would have nothing to do with the City of Riviera Beach."  Then, during the final charge, the court said, "even if [the City Council] didn't have [a] rule" restricting public comment to topics related to City business, it "would not be discriminatory" for the Council chairperson to "exercis[e] her discretion" to say "Mr. Lozman, you need to sit down because we're only going to hear comments about the City of Riviera Beach."  Lozman argues these statements effectively told the jury that the City was merely enforcing a valid rule barring speech about non-City matters, instead of allowing the jury to decide whether such a rule existed and whether this rule was what motivated the City's adverse action against Lozman.

Read out of context, it might seem that the district court's comments could have confused the jury by suggesting that the issue of causation—that is, whether

the City acted out of an improper retaliatory motive or a legitimate enforcement of its rules—was determined as a matter of law in favor of the City.  But these were two isolated remarks, and each was accompanied by a lengthy discussion that clearly presented the fact issue for the jury to decide.  After saying "it would not be appropriate" to read The New York Times during the public comment period, the district court continued:

> The jury is going to have to decide what was in the City Council's mind when they [took the adverse action].  Were they trying to retaliate against him because of something he said before?  Or were they saying, You're not obeying our rule today, and you need to stop. See?  That's what the jury is going to have to decide.

Similarly, after saying it "would not be discriminatory" for the Council chairperson to "exercis[e] her discretion" to remove Mr. Lozman for speaking about non-City matters, the court explained:

> You're looking at what is in the mind of the person making the decision.  So if the chairperson says to Mr. Lozman, you need to sit down, if [the chairperson is] doing it because they believe they're enforcing a rule of procedure, and they're not doing it to strike back at Mr. Lozman, then Mr. Lozman would not have established a discriminatory animus.  But if Mr. Lozman has proven to you that they did have a discriminatory animus then he would have established that fact no matter what they say.  In other words, just because someone says, wait a minute, you're violating this rule or that rule, if what's really in their mind is that they're trying to strike back at Mr. Lozman, that would not be appropriate.  That would not be permissible.  So remember when we're talking about discriminatory animus we are looking at what is in the mind of the person making that decision.  Are they just trying to run an orderly meeting or are they trying to strike back at Mr. Lozman because he engaged in constitutionality protected speech or conduct?

14

Taking the court's instructions "as a whole," the two comments Lozman complains of would not have misled the jury. Christopher v. Cutter Labs., 53 F.3d 1184, 1190 (11th Cir. 1995); see also Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008) ("When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." (quotation omitted)). The district court correctly stated the law concerning the City's authority to restrict public comment during its Council meetings. Further, the court correctly advised the jury that, even if the City claimed to be enforcing such a restriction, the jury would need to decide whether this was pretext for a retaliatory motive. "So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." Palmer, 208 F.3d at 973. The district court was well within its discretion to phrase the instructions as it did.

**AFFIRMED.**

15