(Slip Opinion) OCTOBER TERM, 2017 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOZMAN *v.* CITY OF RIVIERA BEACH, FLORIDA

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–21.  Argued February 27, 2018—Decided June 18, 2018

After petitioner Lozman towed his floating home into a slip in a marina owned by the city of Riviera Beach, he became an outspoken critic of the City's plan to use its eminent domain power to seize waterfront homes for private development and often made critical comments about officials during the public-comment period of city council meetings.  He also filed a lawsuit alleging that the City Council's approval of an agreement with developers violated Florida's open-meetings laws.  In June 2006 the Council held a closed-door session, in part to discuss Lozman's lawsuit.  He alleges that the meeting's transcript shows that councilmembers devised an official plan to intimidate him, and that many of his subsequent disputes with city officials and employees were part of the City's retaliation plan.  Five months after the closed-door meeting, the Council held a public meeting.  During the public-comment session, Lozman began to speak about the arrests of officials from other jurisdictions.  When he refused a councilmember's request to stop making his remarks, the councilmember told the police officer in attendance to "carry him out."  The officer handcuffed Lozman and ushered him out of the meeting.  The City contends that he was arrested for violating the City Council's rules of procedure by discussing issues unrelated to the City and then refusing to leave the podium.  Lozman claims that his arrest was to retaliate for his lawsuit and his prior public criticisms of city officials.  The State's attorney determined that there was probable cause for his arrest, but decided to dismiss the charges.

Lozman then filed suit under 42 U. S. C. §1983, alleging a number of incidents that, under his theory, showed the City's purpose was to harass him, including by initiating an admiralty lawsuit against his floating home, see *Lozman* v. *Riviera Beach*, 568 U. S. 115.  The jury

returned a verdict for the City on all of the claims. The District Court instructed the jury that, for Lozman to prevail on his claim of a retaliatory arrest at the city council meeting, he had to prove that the arresting officer was motivated by impermissible animus against Lozman's protected speech and that the officer lacked probable cause to make the arrest. The Eleventh Circuit affirmed, concluding that any error the District Court made when it instructed the jury to consider the officer's retaliatory animus was harmless because the jury necessarily determined that the arrest was supported by probable cause when it found for the City on Lozman's other claims. The existence of probable cause, the court ruled, defeated a First Amendment claim for retaliatory arrest.

*Held*: The existence of probable cause does not bar Lozman's First Amendment retaliation claim under the circumstances of this case. Pp. 5–13.

(a) The issue here is narrow. Lozman concedes that there was probable cause for his arrest. Nonetheless, he claims, the arrest violated the First Amendment because it was ordered in retaliation for his earlier, protected speech: his open-meetings lawsuit and his prior public criticisms of city officials. Pp. 5–6.

(b) In a §1983 case, a city or other local governmental entity cannot be subject to liability unless the harm was caused in the implementation of "official municipal policy." *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 691. The Court assumes that Lozman's arrest was taken pursuant to an official city policy.

Two major precedents bear on the issue whether the conceded existence of probable cause for the arrest bars recovery regardless of any intent or purpose to retaliate for past speech. Lozman argues that the controlling rule is found in *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, a civil case in which a city board of education decided not to rehire an untenured teacher after a series of incidents, including a telephone call to a local radio station. The phone call was protected speech, but, the Court held, there was no liability unless the alleged constitutional violation was a but-for cause of the employment termination. *Id.,* at 285–287. The City counters that the applicable precedent is *Hartman* v. *Moore*, 547 U. S. 250, where the Court held that a plaintiff alleging a retaliatory prosecution must show the absence of probable cause for the underlying criminal charge, *id.*, at 265–266. If there was probable cause, the case ends. If the plaintiff proves the absence of probable cause, then the *Mt. Healthy* test governs. Pp. 6–10.

(c) Whether *Hartman* or *Mt. Healthy* governs here is a determination that must await a different case. For Lozman's claim is far afield from the typical retaliatory arrest claim, and the difficulties

that might arise if *Mt. Healthy* is applied to the mine run of arrests made by police officers are not present here. Lozman alleges that the City itself retaliated against him pursuant to an "official municipal policy" of intimidation. *Monell, supra,* at 691. The fact that he must prove the existence and enforcement of an official policy motivated by retaliation separates his claim from the typical retaliatory arrest claim. An official retaliatory policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. And it can be difficult to dislodge. A citizen can seek to have an individual officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation. Lozman's allegations, if proved, also alleviate the problems that the City says will result from applying *Mt. Healthy* in retaliatory arrest cases, for it is unlikely that the connection between the alleged animus and injury in a case like this will be "weakened . . . by [an official's] legitimate consideration of speech," *Reichle* v. *Howards,* 566 U. S. 658, 668, and there is little risk of a flood of retaliatory arrest suits against high-level policymakers. Because Lozman alleges that the City deprived him of the right to petition, "'one of the most precious of the liberties safeguarded by the Bill of Rights,'" *BE&K Constr. Co.* v. *NLRB*, 536 U. S. 516, 524, his speech is high in the hierarchy of First Amendment values. On these facts, *Mt. Healthy* provides the correct standard for assessing a retaliatory arrest claim. On remand, the Eleventh Circuit may consider any arguments in support of the District Court's judgment that have been preserved by the City, including whether a reasonable juror could find that the City formed a retaliatory policy to intimidate Lozman during its closed-door session, whether a reasonable juror could find that the arrest constituted an official act by the City, and whether, under *Mt. Healthy*, the City has proved that it would have arrested Lozman regardless of any retaliatory animus. Pp. 10–13.

681 Fed. Appx. 746, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, ALITO, SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–21

_____

## FANE LOZMAN, PETITIONER *v.* CITY OF RIVIERA BEACH, FLORIDA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 18, 2018]

JUSTICE KENNEDY delivered the opinion of the Court.

This case requires the Court to address the intersection of principles that define when arrests are lawful and principles that prohibit the government from retaliating against a person for having exercised the right to free speech. An arrest deprives a person of essential liberties, but if there is probable cause to believe the person has committed a criminal offense there is often no recourse for the deprivation. See, *e.g., Devenpeck* v. *Alford*, 543 U. S. 146, 153 (2004). At the same time, the First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech. *Crawford-El* v. *Britton*, 523 U. S. 574, 592 (1998).

The petitioner in this case alleges that high-level city policymakers adopted a plan to retaliate against him for protected speech and then ordered his arrest when he attempted to make remarks during the public-comment portion of a city council meeting. The petitioner now concedes there was probable cause for the arrest. The question is whether the presence of probable cause bars petitioner's retaliatory arrest claim under these

circumstances.

## I

The city of Riviera Beach is on the Atlantic coast of Florida, about 75 miles north of Miami. The petitioner here is Fane Lozman. In 2006 Lozman towed his floating home into a slip in the City-owned marina, where he became a resident. Thus began his contentious relationship with the City's elected officials.

Soon after his arrival Lozman became an outspoken critic of the City's plan to use its eminent domain power to seize homes along the waterfront for private development. Lozman often spoke during the public-comment period at city council meetings and criticized councilmembers, the mayor, and other public employees. He also filed a lawsuit alleging that the Council's approval of an agreement with developers violated Florida's open-meetings laws.

In June 2006 the Council held a closed-door session, in part to discuss the open-meetings lawsuit that Lozman recently had filed. According to the transcript of the meeting, Councilmember Elizabeth Wade suggested that the City use its resources to "intimidate" Lozman and others who had filed lawsuits against the City. App. 176. Later in the meeting a different councilmember asked whether there was "a consensus of what Ms. Wade is saying," and others responded in the affirmative. *Id.*, at 181–182. Lozman alleges that these remarks formed an official plan to intimidate him. The City, on the other hand, maintains that the only consensus reached during the meeting was to invest the money and resources necessary to prevail in the litigation against it.

In all events, Lozman became embroiled in a number of disputes with city officials and employees over the ensuing years, many of which Lozman says were part of the City's plan of retaliation. The dispute that led to this litigation took place in 2006. In November of that year, five months

after the closed-door meeting where the "intimidate" comment was made, the City Council held a public meeting. The agenda included a public-comment session in which citizens could address the Council for a few minutes. As he had done on earlier occasions and would do more than 200 times over the coming years, see Tr. in No. 9:08–cv–80134 (SD Fla.), Doc. 785, p. 61, Lozman stepped up to the podium to give remarks. He began to discuss the recent arrest of a former county official. Councilmember Wade interrupted Lozman, directing him to stop making those remarks. Lozman continued speaking, this time about the arrest of a former official from the city of West Palm Beach. Wade then called for the assistance of the police officer in attendance. The officer approached Lozman and asked him to leave the podium. Lozman refused. So Wade told the officer to "carry him out." The officer handcuffed Lozman and ushered him out of the meeting. The incident was recorded on video. See Record, Def. Exh. 505, Doc. 687, available at https://www.supremecourt.gov/media/video/mp4files/Lozman_v_RivieraBeach.mp4. According to the City, Lozman was arrested because he violated the City Council's rules of procedure by discussing issues unrelated to the City and then refused to leave the podium. According to Lozman, the arrest was to retaliate for his open-meetings lawsuit against the City and his prior public criticisms of city officials.

Under arrest, Lozman was escorted to police headquarters. He was charged with disorderly conduct and resisting arrest without violence and then released. Later, the State's attorney determined there was probable cause to arrest Lozman for those offenses but decided to dismiss the charges.

Lozman filed this lawsuit under Rev. Stat. §1979, 42 U. S. C. §1983. The complaint described a number of alleged incidents that, under Lozman's theory, showed the City's purpose to harass him in different ways. These

ranged from a city employee telling Lozman that his dog needed a muzzle to the City's initiation of an admiralty lawsuit against Lozman's floating home—the latter resulting in an earlier decision by this Court. See *Lozman* v. *Riviera Beach*, 568 U. S. 115 (2013). The evidence and arguments presented by both parties with respect to all the matters alleged in Lozman's suit consumed 19 days of trial before a jury. The jury returned a verdict for the City on all of the claims.

Before this Court, Lozman seeks a reversal only as to the City's alleged retaliatory arrest at the November 2006 city council meeting. The District Court instructed the jury that, for Lozman to prevail on this claim, he had to prove that the arresting officer was himself motivated by impermissible animus against Lozman's protected speech and that the officer lacked probable cause to make the arrest. The District Court determined that the evidence was insufficient as a matter of law to support probable cause for the offenses charged at the time of the arrest (disorderly conduct and resisting arrest without violence). But the District Court concluded that there may have been probable cause to arrest Lozman for violating a Florida statute that prohibits interruptions or disturbances in schools, churches, or other public assemblies. Fla. Stat. §871.01 (2017). (The City had brought this statute to the District Court's attention during the course of the litigation.) The District Court allowed the jury to decide whether there was probable cause to arrest for the public-disturbance offense.

Judgment having been entered for the City after the jury's verdict, Lozman appealed. The Court of Appeals for the Eleventh Circuit affirmed. 681 Fed. Appx. 746 (2017). As relevant here, the Court of Appeals assumed that the District Court erred when it instructed the jury that the officer, rather than the City, must have harbored the retaliatory animus. But the Court of Appeals held that

any error was harmless because the jury necessarily determined that the arrest was supported by probable cause when it found for the City on some of Lozman's other claims—specifically, his claims that the arrest violated the Fourth Amendment and state law. *Id.,* at 751–752. And, under precedents which the Court of Appeals deemed controlling, the existence of probable cause defeated a First Amendment claim for retaliatory arrest. See *id.*, at 752 (citing *Dahl* v. *Holley*, 312 F. 3d 1228, 1236 (CA11 2002)).

This Court granted certiorari, 583 U. S. ___ (2017), on the issue whether the existence of probable cause defeats a First Amendment claim for retaliatory arrest under §1983. The Court considered this issue once before, see *Reichle* v. *Howards*, 566 U. S. 658, 663 (2012), but resolved the case on different grounds.

## II

The issue before the Court is a narrow one. In this Court Lozman does not challenge the constitutionality of Florida's statute criminalizing disturbances at public assemblies. He does not argue that the statute is overly broad, *e.g., Terminiello* v. *Chicago*, 337 U. S. 1 (1949); *Watchtower Bible & Tract Soc. of N. Y., Inc.* v. *Village of Stratton*, 536 U. S. 150 (2002); or that it impermissibly targets speech based on its content or viewpoint, *e.g., Texas* v. *Johnson*, 491 U. S. 397 (1989); *Cohen* v. *California*, 403 U. S. 15 (1971); or that it was enforced in a way that curtailed Lozman's right to peaceful assembly, *e.g., Brown* v. *Louisiana*, 383 U. S. 131 (1966). Lozman, furthermore, does not challenge the validity of the City Council's asserted limitations on the subjects speakers may discuss during the public-comment portion of city council meetings (although he continues to dispute whether those limitations in fact existed).

Instead Lozman challenges only the lawfulness of his

arrest, and even that challenge is a limited one. There is no contention that the City ordered Lozman's arrest to discriminate against him based on protected classifica- tions, or that the City denied Lozman his equal protection rights by placing him in a "class of one." See *Village of Willowbrook* v. *Olech*, 528 U. S. 562 (2000) (*per curiam*). Lozman, moreover, now concedes that there was probable cause for the arrest. Although Lozman does not indicate what facts he believes support this concession, it appears that the existence of probable cause must be based on the assumption that Lozman failed to depart the podium after receiving a lawful order to leave.

Lozman's claim is that, notwithstanding the presence of probable cause, his arrest at the city council meeting violated the First Amendment because the arrest was ordered in retaliation for his earlier, protected speech: his open-meetings lawsuit and his prior public criticisms of city officials. The question this Court is asked to consider is whether the existence of probable cause bars that First Amendment retaliation claim.

## III

It is well established that in a §1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of "official municipal policy." *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 691 (1978); see *Los Angeles County* v. *Humphries*, 562 U. S. 29, 36 (2010). Lozman's §1983 damages claim is against only the City itself, based on the acts of its officers and employees—here, the mem- bers of the City Council. Lozman says that the City, through its city councilmembers, formed an official policy to retaliate against him and ordered his arrest. The Court assumes in the discussion to follow that the arrest was taken pursuant to an official city policy, but whether there was such a policy and what its content may have been are

issues not decided here.

This brings the discussion to the issue the parties deem central to the case: whether the conceded existence of probable cause for the arrest bars recovery regardless of any intent or purpose to retaliate for past speech. Two major precedents could bear on this point, and the parties disagree on which should be applicable here. The first is this Court's decision in *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274 (1977). See also *Board of Comm'rs, Wabaunsee Cty.* v. *Umbehr*, 518 U. S. 668 (1996). Lozman urges that the rule of *Mt. Healthy* should control and that under it he is entitled to recover. The second is this Court's decision in *Hartman* v. *Moore*, 547 U. S. 250 (2006), which the City cites for the proposition that once there is probable cause there can be no further claim that the arrest was retaliation for protected speech.

*Mt. Healthy* arose in a civil, not criminal, context. A city board of education decided not to rehire an untenured school teacher after a series of incidents indicating unprofessional demeanor. 429 U. S., at 281–283. One of the incidents was a telephone call the teacher made to a local radio station to report on a new school policy. *Id.,* at 282. Because the board of education did not suggest that the teacher violated any established policy in making the call, this Court accepted a finding by the District Court that the call was protected speech. *Id.,* at 284. The Court went on to hold, however, that since the other incidents, standing alone, would have justified the dismissal, relief could not be granted if the board could show that the discharge would have been ordered even without reference to the protected speech. *Id.,* at 285–287. In terms of precepts in the law of torts, the Court held that even if retaliation might have been a substantial motive for the board's action, still there was no liability unless the alleged constitutional violation was a but-for cause of the employment termination. *Ibid.*; see also *Umbehr*, *supra*, at 675.

The City resists the applicability of the *Mt. Healthy* test as the sole determinant here. It contends that, where there was probable cause for the arrest, the applicable precedent is *Hartman*—a case that was in the criminal sphere and that turned on the existence of probable cause.

The background in *Hartman* was that a company and its chief executive, William Moore, had engaged in an extensive lobbying and governmental relations campaign opposing a particular postal service policy. 547 U. S., at 252–253. Moore and the company were later prosecuted for violating federal statutes in the course of that lobbying. *Id.,* at 253–254. After being acquitted, Moore filed suit against five postal inspectors, alleging that they had violated his First Amendment rights when they instigated his prosecution in retaliation for his criticisms of the Postal Service. *Id.,* at 254. This Court held that a plaintiff alleging a retaliatory prosecution must show the absence of probable cause for the underlying criminal charge. *Id.*, at 265–266. If there was probable cause, the case ends. If the plaintiff proves the absence of probable cause, then the *Mt. Healthy* test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the prosecution, and, if that showing is made, the defendant can prevail only by showing that the prosecution would have been initiated without respect to retaliation. See 547 U. S., at 265–266.

The Court in *Hartman* deemed it necessary to inquire as to the existence of probable cause because proving the link between the defendant's retaliatory animus and the plaintiff's injury in retaliatory prosecution cases "is usually more complex than it is in other retaliation cases." *Id.,* at 261. An action for retaliatory prosecution "will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute." *Id.,* at 261–262. Instead, the plaintiff must sue some other government official and prove that the official "induced the

prosecutor to bring charges that would not have been initiated without his urging." *Id.,* at 262. Noting that inquiries with respect to probable cause are commonplace in criminal cases, the Court determined that requiring plaintiffs in retaliatory prosecution cases to prove the lack of probable cause would help "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action." *Id.,* at 263.

The City's argument here is that, just as probable cause is a bar in retaliatory prosecution cases, so too should it be a bar in this case, involving a retaliatory arrest. There is undoubted force in the City's position. *Reichle*, 566 U. S., at 667–668. There are on average about 29,000 arrests per day in this country. Dept. of Justice–FBI, Uniform Crime Report, Crime in the United States, 2016 (Fall 2017). In deciding whether to arrest, police officers often make split-second judgments. The content of the suspect's speech might be a consideration in circumstances where the officer must decide whether the suspect is ready to cooperate, or, on the other hand, whether he may present a continuing threat to interests that the law must protect. See, *e.g., District of Columbia* v. *Wesby*, 583 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 10) ("suspect's untruthful and evasive answers to police questioning could support probable cause" (internal quotation marks omitted)).

For these reasons retaliatory arrest claims, much like retaliatory prosecution claims, can "present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." *Reichle*, 566 U. S., at 668. That means it can be difficult to discern whether an arrest was caused by the officer's legitimate or illegitimate consideration of speech. *Ibid.* And the complexity of proving (or disproving) causation in these cases creates a risk that the courts will be flooded with dubious retaliatory arrest suits. See Brief for District of Columbia et al. as *Amici Curiae* 5–11.

At the same time, there are substantial arguments that *Hartman*'s framework is inapt in retaliatory arrest cases, and that *Mt. Healthy* should apply without a threshold inquiry into probable cause. For one thing, the causation problem in retaliatory arrest cases is not the same as the problem identified in *Hartman*. *Hartman* relied in part on the fact that, in retaliatory prosecution cases, the causal connection between the defendant's animus and the prosecutor's decision to prosecute is weakened by the "presumption of regularity accorded to prosecutorial decisionmaking." 547 U. S., at 263. That presumption does not apply in this context. See *Reichle*, *supra*, at 669. In addition, there is a risk that some police officers may exploit the arrest power as a means of suppressing speech. See Brief for Institute for Free Speech as *Amicus Curiae*.

## IV

The parties' arguments raise difficult questions about the scope of First Amendment protections when speech is made in connection with, or contemporaneously to, criminal activity. But whether in a retaliatory arrest case the *Hartman* approach should apply, thus barring a suit where probable cause exists, or, on the other hand, the inquiry should be governed only by *Mt. Healthy* is a determination that must await a different case. For Lozman's claim is far afield from the typical retaliatory arrest claim, and the difficulties that might arise if *Mt. Healthy* is applied to the mine run of arrests made by police officers are not present here.

Here Lozman does not sue the officer who made the arrest. Indeed, Lozman likely could not have maintained a retaliation claim against the arresting officer in these circumstances, because the officer appears to have acted in good faith, and there is no showing that the officer had any knowledge of Lozman's prior speech or any motive to arrest him for his earlier expressive activities.

Instead Lozman alleges more governmental action than simply an arrest. His claim is that the City itself retaliated against him pursuant to an "official municipal policy" of intimidation. *Monell*, 436 U. S., at 691. In particular, he alleges that the City, through its legislators, formed a premeditated plan to intimidate him in retaliation for his criticisms of city officials and his open-meetings lawsuit. And he asserts that the City itself, through the same high officers, executed that plan by ordering his arrest at the November 2006 city council meeting.

The fact that Lozman must prove the existence and enforcement of an official policy motivated by retaliation separates Lozman's claim from the typical retaliatory arrest claim. An official retaliatory policy is a particularly troubling and potent form of retaliation, for a policy can be long term and pervasive, unlike an ad hoc, on-the-spot decision by an individual officer. An official policy also can be difficult to dislodge. A citizen who suffers retaliation by an individual officer can seek to have the officer disciplined or removed from service, but there may be little practical recourse when the government itself orchestrates the retaliation. For these reasons, when retaliation against protected speech is elevated to the level of official policy, there is a compelling need for adequate avenues of redress.

In addition, Lozman's allegations, if proved, alleviate the problems that the City says will result from applying *Mt. Healthy* in retaliatory arrest cases. The causation problem in arrest cases is not of the same difficulty where, as is alleged here, the official policy is retaliation for prior, protected speech bearing little relation to the criminal offense for which the arrest is made. In determining whether there was probable cause to arrest Lozman for disrupting a public assembly, it is difficult to see why a city official could have legitimately considered that Lozman had, months earlier, criticized city officials or filed a

lawsuit against the City. So in a case like this one it is unlikely that the connection between the alleged animus and injury will be "weakened . . . by [an official's] legitimate consideration of speech." *Reichle*, 566 U. S., at 668. This unique class of retaliatory arrest claims, moreover, will require objective evidence of a policy motivated by retaliation to survive summary judgment. Lozman, for instance, cites a transcript of a closed-door city council meeting and a video recording of his arrest. There is thus little risk of a flood of retaliatory arrest suits against high-level policymakers.

As a final matter, it must be underscored that this Court has recognized the "right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Constr. Co.* v. *NLRB*, 536 U. S. 516, 524 (2002) (internal quotation marks omitted). Lozman alleges the City deprived him of this liberty by retaliating against him for his lawsuit against the City and his criticisms of public officials. Thus, Lozman's speech is high in the hierarchy of First Amendment values. See *Connick* v. *Myers*, 461 U. S. 138, 145 (1983).

For these reasons, Lozman need not prove the absence of probable cause to maintain a claim of retaliatory arrest against the City. On facts like these, *Mt. Healthy* provides the correct standard for assessing a retaliatory arrest claim. The Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts.

This is not to say, of course, that Lozman is ultimately entitled to relief or even a new trial. On remand, the Court of Appeals, applying *Mt. Healthy* and other relevant precedents, may consider any arguments in support of the District Court's judgment that have been preserved by the City. Among other matters, the Court of Appeals may wish to consider (1) whether any reasonable juror could find that the City actually formed a retaliatory policy to

intimidate Lozman during its June 2006 closed-door session; (2) whether any reasonable juror could find that the November 2006 arrest constituted an official act by the City; and (3) whether, under *Mt. Healthy*, the City has proved that it would have arrested Lozman regardless of any retaliatory animus—for example, if Lozman's conduct during prior city council meetings had also violated valid rules as to proper subjects of discussion, thus explaining his arrest here.

For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–21

_____

## FANE LOZMAN, PETITIONER *v.* CITY OF RIVIERA BEACH, FLORIDA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 18, 2018]

JUSTICE THOMAS, dissenting.

We granted certiorari to decide "whether the existence of probable cause defeats a First Amendment claim for retaliatory arrest under [42 U. S. C.] §1983." *Ante,* at 5. Instead of resolving that question, the Court decides that probable cause should not defeat a "unique class of retaliatory arrest claims." *Ante,* at 12. To fall within this unique class, a claim must involve objective evidence, of an official municipal policy of retaliation, formed well before the arrest, in response to highly protected speech, that has little relation to the offense of arrest. See *ante,* at 11–12. No one briefed, argued, or even hinted at the rule that the Court announces today. Instead of dreaming up our own rule, I would have answered the question presented and held that plaintiffs must plead and prove a lack of probable cause as an element of a First Amendment retaliatory-arrest claim. I respectfully dissent.

## I

The petition for certiorari asked us to resolve whether "the existence of probable cause defeat[s] a First Amendment retaliatory-arrest claim as a matter of law." Pet. for Cert. i. That question has divided the federal courts for decades. See *id.*, at 10–13. We granted certiorari to consider it six years ago in *Reichle* v. *Howards*, 566 U. S. 658,

663 (2012). But we did not resolve it then because the petitioner's second question presented—whether qualified immunity applied—fully resolved the case. *Ibid.* Since *Reichle*, the split in the federal courts has widened. See Pet. for Cert. 12–13. In this case, we again granted certiorari, 538 U. S. ___ (2017), this time only on the question of probable cause, see Pet. for Cert. i.

Yet the Court chooses not to resolve that question, leaving in place the decades-long disagreement among the federal courts. The parties concentrated all their arguments on this question in their briefs and at oral argument. Neither party suggested that there was something special about Fane Lozman's claim that would justify a narrower rule. See, *e.g.,* Tr. of Oral Arg. 15–16 (refusing to take the "fallback position" that this "is some special kind of case"). Yet the Court does that work for them by defining a "unique class of retaliatory arrest claims" that do not require plaintiffs to plead and prove a lack of probable cause. *Ante,* at 12.

By my count, the Court has identified five conditions that are necessary to trigger its new rule. First, there must be "an 'official municipal policy' of intimidation." *Ante,* at 11 (quoting *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 691 (1978)). Second, the policy must be "premeditated" and formed well before the arrest—here, for example, the policy was formed "months earlier." *Ante,* at 11.[1] Third, there must be "objective evidence" of such a policy. *Ante,* at 12. Fourth, there must be "little relation" between the "protected speech" that prompted the retaliatory policy and "the criminal offense

───────────

[1] This requirement suggests that the Court's rule does not apply when the "policy" that the plaintiff challenges is an on-the-spot decision by a single official with final policymaking authority, like the "policy" that this Court recognized in *Pembaur* v. *Cincinnati*, 475 U. S. 469 (1986). See *id.,* at 484–485 (holding that a county prosecutor's order to forcibly enter the plaintiff's clinic was a "municipal policy").

for which the arrest is made." *Ante,* at 11. Finally, the protected speech that provoked the retaliatory policy must be "high in the hierarchy of First Amendment values." *Ante,* at 12. Where all these features are present, the Court explains, there is not the same "causation problem" that exists for other retaliatory-arrest claims. *Ante,* at 11.

I find it hard to believe that there will be many cases where this rule will even arguably apply, and even harder to believe that the plaintiffs in those cases will actually prove all five requirements. Not even Lozman's case is a good fit, as the Court admits when it discusses the relevant considerations for remand. See *ante,* at 12–13. In my view, we should not have gone out of our way to fashion a complicated rule with no apparent applicability to this case or any other.

## II

Turning to the question presented, I would hold that plaintiffs bringing a First Amendment retaliatory-arrest claim must plead and prove an absence of probable cause.[2] This Court has "repeatedly noted that 42 U. S. C. §1983 creates '"a species of tort liability."'" *Memphis Community School Dist.* v. *Stachura,* 477 U. S. 299, 305 (1986) (footnote omitted). Accordingly, we "defin[e] the contours and prerequisites of a §1983 claim" by "look[ing] first to the common law of torts." *Manuel* v. *Joliet,* 580 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 12); see, *e.g., Heck* v. *Humphrey,* 512 U. S. 477, 484 (1994) (analogizing to the "common-law cause of action for malicious prosecution"); *id.,* at 491 (THOMAS, J., concurring) (emphasizing that the decision

─────────

[2] I am skeptical that 42 U. S. C. §1983 recognizes a claim for retaliatory arrests under the First Amendment. I adhere to the view that "*no* 'intent-based' constitutional tort would have been actionable under the §1983 that Congress enacted." *Crawford-El* v. *Britton,* 523 U. S. 574, 612 (1998) (Scalia, J., dissenting). But because no party presses this argument, I assume that such claims are actionable under §1983.

was "consistent . . . with the state of the common law at the time §1983 was enacted").

When §1983 was enacted, there was no common-law tort for retaliatory arrest in violation of the freedom of speech. See *Hartman* v. *Moore*, 547 U. S. 250, 259 (2006). I would therefore look to the common-law torts that "provid[e] the closest analogy" to this claim. *Heck*, *supra*, at 484. The closest analogs here are the three arrest-based torts under the common law: false imprisonment, malicious prosecution, and malicious arrest. In defining the elements of these three torts, 19th-century courts emphasized the importance of probable cause.

Consider first the tort of false imprisonment. Common-law courts stressed the need to shape this tort with an "indulgence" for peace officers, who are "specially charged with a duty in the enforcement of the laws." T. Cooley, Law of Torts 175 (1880) (Cooley); see, *e.g., Hogg* v. *Ward*, 3 H. & N. 417, 423, 157 Eng. Rep. 533, 536 (Ex. 1858) (opinion of Watson, B.) (stressing "the utmost importance that the police throughout the country should be supported in the execution of their duty"). Accordingly, private citizens were always liable for false imprisonment if the arrestee had not actually committed a felony, but constables were "excused" if they had "made [the arrest] on reasonable grounds of belief"—*i.e.,* probable cause. Cooley 175; accord, 2 C. Addison, Law of Torts §803, p. 18 (1876); 1 F. Hilliard, The Law of Torts or Private Wrongs §18, pp. 207–208, and n. (a) (1866). As Lord Mansfield explained, it was "of great consequence to the police" that probable cause shield officers from false-imprisonment claims, as "it would be a terrible thing" if the threat of liability dissuaded them from performing their official duties. *Ledwith* v. *Catchpole*, 2 Cald. 291, 295 (K. B. 1783). This concern outweighed "the mischief and inconvenience to the public" from the reality that "[m]any an innocent man has and may be taken up upon suspicion." *Ibid.* Many State Su-

preme Courts agreed with Lord Mansfield's reasoning.
See, *e.g., Burns* v. *Erben*, 40 N. Y. 463, 469 (1869) (opinion
of Woodruff, J.) (quoting *Ledwith*); *Brockway* v. *Crawford*,
48 N. C. 433, 437 (1856) ("[The] exempt[ion] for responsi-
bility" for arrests based on probable cause "encourages . . .
a sharp look-out for the apprehension of felons").  As one
court put it, "How, in the great cities of this land, could
police power be exercised, if every peace officer is liable to
civil action for false imprisonment" whenever "persons
arrested upon probable cause shall afterwards be found
innocent?"  *Hawley* v. *Butler*, 54 Barb. 490, 496 (N. Y. Sup.
1868).

Courts also stressed the importance of probable cause
when defining the torts of malicious prosecution and
malicious arrest.  See, *e.g., Ahern* v. *Collins*, 39 Mo. 145,
150 (1866) (holding that "malice and want of probable
cause are necessary ingredients of both").  For the tort of
malicious prosecution, courts emphasized the "necessity"
of both the "allegation" and "proof" of probable cause, in
light of the public interest "that criminals should be
brought to justice."  *Hogg* v. *Pinckney*, 16 S. C. 387, 393
(1882); see also *Chrisman* v. *Carney*, 33 Ark. 316, 326
(1878) ("The existence of probable cause is of itself alone a
complete defense . . . . The interest which society has in
the enforcement of the criminal laws requires this rule").
Similarly, if the element of probable cause were not
"strictly guarded," "ill consequences would ensue to the
public, for no one would willingly undertake to vindicate a
breach of the public law and discharge his duty to society,
with the prospect of an annoying suit staring him in the
face."  *Ventress* v. *Rosser*, 73 Ga. 534, 541 (1884); accord,
*Cardival* v. *Smith*, 109 Mass. 158 (1872).  The element of
probable cause also played an evidentiary role for both
torts.  Lack of probable cause provided "evidence of malice,
though inconclusive," *Herman* v. *Brookerhoff*, 8 Watts 240,
241 (Pa. 1839), because "[m]alice may be inferred from a

total want of probable cause," *Ventress*, *supra*, at 541; accord, *Ahern*, *supra*, at 150.

In sum, when §1983 was enacted, the common law recognized probable cause as an important element for ensuring that arrest-based torts did not unduly interfere with the objectives of law enforcement. Common-law courts were wary of "throw[ing] down the bars which protect public officers from suits for acts done within the scope of their duty and authority, by recognizing the right of every one who chooses to imagine or assert that he is aggrieved by their doings, to make use of an allegation that they were malicious in motive to harass them with suits on that ground." *Chelsey* v. *King*, 74 Me. 164, 175–176 (1882).

Applying that principle here, it follows that plaintiffs bringing a First Amendment retaliatory-arrest claim under §1983 should have to plead and prove a lack of probable cause. I see no justification for deviating from the historical practice simply because an arrest claim is framed in terms of the First Amendment. Even under a First Amendment theory, "the significance of probable cause or the lack of it looms large." *Hartman,* 547 U. S., at 265. The presence of probable cause will tend to disprove that the arrest was done out of retaliation for the plaintiff's speech, and the absence of probable cause will tend to prove the opposite. See *id.,* at 261. Because "[p]robable cause or its absence will be at least an evidentiary issue in practically all such cases" and "[b]ecause showing [its] absence . . . will have high probative force, and can be made mandatory with little or no added cost," the absence of probable cause should be an "element" of the plaintiff's case. *Id.,* at 265–266; see also *id.*, at 264, n. 10 (refusing to carve out an exception for unusual cases).

Moreover, as with the traditional arrest-based torts, police officers need the safe harbor of probable cause in the First Amendment context to be able to do their jobs

effectively. Police officers almost always exchange words with suspects before arresting them. And often a suspect's "speech provides evidence of a crime or suggests a potential threat." *Reichle,* 566 U. S., at 668. If probable cause were not required, the threat of liability might deter an officer from arresting a suspected criminal who, for example, has a political bumper sticker on his car, cf. *Kilpatrick* v. *United States*, 432 Fed. Appx. 937 (CA11 2011); is participating in a politically tinged protest, *Morse* v. *San Francisco Bay Area Rapid Transit Dist.*, 2014 WL 572352 (ND Cal., Feb. 11, 2014); or confronts and criticizes the officer during the arrest of a third party, *Holland* v. *San Francisco*, 2013 WL 968295 (ND Cal., Mar. 12, 2013). Allowing plaintiffs to bring a retaliatory-arrest claim in such circumstances, without pleading and proving a lack of probable cause, would permit plaintiffs to harass officers with the kind of suits that common-law courts deemed intolerable.

\*  \*  \*

Because we should have answered the question presented and held that probable cause necessarily defeats First Amendment retaliatory-arrest claims, I respectfully dissent.