[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13807
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00192-HLM

KIERSTEN QUICK,

Plaintiff-Appellant,

versus

STATE TROOPER JOSEPH GEDDIE,
Individually,
DENNY REYES,
Dade County Sheriff's Deputy,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 11, 2019)

Before MARCUS, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Kiersten Quick appeals the summary judgment in favor of Trooper Joseph Geddie of the Georgia State Patrol and Deputy Denny Reyes of the Dade County Sheriff's Office and against Quick's complaint that she was arrested without probable cause and in retaliation for exercising rights protected by the First Amendment. 42 U.S.C. § 1983. Quick also complained of excessive force and malicious prosecution by Trooper Geddie, but she has abandoned any challenge that she could have made to the summary judgment against those claims. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). The district court ruled that the officers were entitled to qualified immunity. We affirm.

## I. BACKGROUND

On November 23, 2016, Quick's daughter, Jessica Gaha, had a single-car traffic accident on a two-lane road in Dade County, Georgia. Gaha's vehicle left the road, entered a resident's front yard, and struck a tree. Gaha telephoned her friend P.P. and then Quick, who called 911 to report Gaha's accident. P.P arrived first at the scene, followed by Deputy Reyes, and then Trooper Geddie.

Trooper Geddie activated the video camera on the dash of his patrol car and the microphone affixed to his uniform en route to the scene. Trooper Geddie parked his patrol car perpendicular to the driver's side of Gaha's vehicle, which blocked one lane of traffic and straddled the right edge of the road. Trooper Geddie

2

exited his patrol car, Deputy Reyes handed Gaha's license to Trooper Geddie, and Deputy Reyes walked away from the scene as Trooper Geddie inspected Gaha's wrecked vehicle. Trooper Geddie talked to Gaha about the accident and she described how she lost control of her vehicle and how it became stuck when she attempted to drive it back onto the road.

When Trooper Geddie asked Gaha for identification, she handed him a driver's license from Indiana and volunteered that she had moved to Georgia about a year earlier without "transferr[ing] all [her] stuff" to reflect her change of residence. Trooper Geddie returned to his patrol car and ran a check of Gaha's license. Within two minutes, Trooper Geddie learned that Gaha's license was suspended.

Trooper Geddie asked Gaha to meet him in front of his patrol car and then stated that he had some "bad news." Trooper Geddie told Gaha that her license was suspended so he had to arrest her and to handcuff her. Trooper Geddie allowed Gaha to remove an item from the pocket of her jacket, hand it to P.P., who was standing close by, and to ask P.P. to telephone Quick. At Gaha's request, Trooper Geddie also delayed applying handcuffs while he answered several of her questions and informed her that her Indiana license plate had expired. During those exchanges, Quick arrived in a black sport utility vehicle and parked about fifty yards away in a church parking lot. Gaha shouted that she was "going to jail" and

asked Quick to "please come get [her]." As Quick walked into view of the video camera, P.P. repeated that Gaha was "going to jail" and, after obtaining permission from Trooper Geddie, P.P retrieved Gaha's purse from her wrecked vehicle.

Quick advanced toward Trooper Geddie as he handcuffed Gaha and said, "Are you f***ing kidding me?" Gaha exclaimed, "Mom stop it!" Oswaldo Lopez, Quick's fiancé, joined Quick as she demanded that Trooper Geddie explain "what crime" had occurred. Trooper Geddie ordered the couple to "go over there and stand." Gaha again shouted, "Mom stop it!" Quick turned her back to Trooper Geddie and continued to talk as she walked toward Gaha's vehicle. Lopez failed to move, so Trooper Geddie pointed at Quick's vehicle and commanded, "go right back over there," "ma'am go right back over there or you will go to jail for obstruction," and "right now, go back over there where you was at." Gaha yelled, "Mom stop it!," and then pleaded, "My keys are in my car, [Mom] can you come get me from jail?" and "Can you take care of my car please?"

When Trooper Geddie and Gaha turned toward the patrol car, Quick continued to shout at Gaha, who responded, "I'm sorry this is inconvenient for you." Quick walked around to the passenger's side of Gaha's vehicle while Trooper Geddie escorted Gaha to the back of the patrol car and asked her to "have a seat please." P.P. climbed into the driver's seat of Gaha's car, after which Gaha shouted from the back of the patrol car, "well, I really wasn't speeding mother."

4

Trooper Geddie saw Quick open the front passenger's side door of Gaha's vehicle, bend over, and peer into the vehicle. Trooper Geddie walked briskly to the vehicle while shouting at Quick, "well, ma'am, I'm going to tell you one more time to go right back over there or you are going to jail." Deputy Reyes moved to the driver's side door of Gaha's vehicle to join P.P. and Lopez. Trooper Geddie stopped in front of Gaha's front passenger door and ordered Quick, "No, you go right over there" and "get over there right now" while indicating for Quick to return to her vehicle. Quick argued with Trooper Geddie as he continued to point at her vehicle and said, "I don't care what," "You go now," and "do you want to go to jail?" Quick answered, "What are you going to take me to jail for? I know, I know the law. I was married to an attorney for 20 years." Trooper Geddie warned Quick that she was "obstructing," and she responded, "I'm not obstructing anything," and waved her hand at Trooper Geddie. When Trooper Geddie said, "Yes you are. I told you," Quick retorted, "You're harassing me," and raised her hand a second time.

Trooper Geddie grabbed Quick's arm, and she screamed, "Take your hands off of me," and shrieked. As the two fell to the ground, Deputy Reyes walked calmly to the passenger side of the vehicle. Quick continued to shriek and Lopez moved to the trunk of Gaha's vehicle to intercede, but Deputy Reyes blocked Lopez from approaching Trooper Geddie and Quick. Deputy Reyes and Trooper

5

Geddie ordered Lopez five times to "back away" with the warning that he would "go to jail too." Quick continued to scream while Lopez yelled repeatedly to "let her go."

When Lopez backed away and grew silent, Quick shouted, "I didn't do a dam* thing," and started screaming again. Quick later admitted that she wrested her left arm away from Trooper Geddie and laid on top of it to prevent him from applying handcuffs. Trooper Geddie said, "Ma'am," after which Deputy Reyes remarked about "one of her arms," and Trooper Geddie responded, "Yes she needs to quit jerking back from me too." Quick bellowed, "He's f***ing putting me in a headlock for nothing, I did nothing. Nothing . . . nothing at all." As Deputy Reyes and Trooper Geddie conversed calmly, Quick continued to scream.

Trooper Geddie helped Quick stand upright. With Deputy Reyes's assistance, Trooper Geddie escorted Quick to Deputy Reyes's patrol car, where she stated, "I happen to be a business owner. I have a lot of clients around here. And you don't have any idea who you are messing with." Trooper Geddie responded, "Good for you," closed the door of Deputy Reyes's patrol car, and returned to Gaha's vehicle, where he was joined by Deputy Reyes. Lopez pressed Trooper Geddie for information "to get this lady out." Trooper Geddie instructed Lopez to "go right back over there" to his vehicle where Trooper Geddie would "come talk to [him] in a minute," and Lopez walked away. Deputy Reyes conferred briefly

6

with Trooper Geddie and, as Deputy Reyes walked back to his patrol car, he ordered Lopez twice to "get away from my car." Trooper Geddie advised Lopez that the "best thing you can do is go home."

After Deputy Reyes drove away with Quick, Trooper Geddie examined Gaha's vehicle briefly, and then radioed dispatch to send a tow truck and to send an officer to transport Gaha to headquarters. Trooper Geddie spoke briefly with P.P., and when Trooper Geddie remarked that he had warned Quick "numerous times" to move away, P.P responded, "I heard you tell her," but "I didn't see what happened." Within a few minutes, Trooper Geddie transferred Gaha to another patrol car. Trooper Geddie did not leave the scene until the tow truck drove away with Gaha's vehicle.

Quick filed a complaint that alleged the officers falsely arrested her and that the arrest was retaliatory in violation of her rights under the First, Fourth, and Fourteenth Amendments. 42 U.S.C. § 1983. The officers moved for summary judgment based on qualified immunity. Deputy Reyes argued that he did not participate in Quick's arrest and both officers argued that Trooper Geddie's arguable probable cause to arrest Quick for obstruction of a law enforcement officer, Ga. Code Ann. § 16-10-24(a), barred her claims. Quick moved for partial summary judgment on her claim of false arrest.

7

The district court granted the officers' motion for summary judgment and denied Quick's motion for partial summary judgment. The district court ruled that Deputy Reyes lacked "sufficient involvement in, or control over" Quick's arrest that would have required him to intervene and, alternatively, that "at least arguable probable cause existed to support [Quick's] arrest" and no clearly established law "put . . . [Deputy] Reyes on notice that, under the circumstances, his failure to intervene . . . was unlawful." The district court also ruled that arguable probable cause barred Quick's claim of a false arrest and that "the existence of probable cause defeated a First Amendment retaliatory arrest claim."

## II. STANDARD OF REVIEW

"We review *de novo* whether the officers are entitled to immunity." *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016). "Because the officers raised their defenses in a motion for summary judgment, they should prevail if there is 'no genuine dispute as to any material fact' and they are entitled to immunity 'as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III. DISCUSSION

Quick challenges the summary judgment that the officers were entitled to qualified immunity. She argues that the district court mischaracterized her conduct and erroneously construed the evidence in favor of Deputy Reyes. Quick also

8

argues that the district court misapplied the law governing the offense of misdemeanor obstruction in Georgia. These arguments lack merit.

The district court construed the evidence in the record accurately. The district court, as it was required to do, viewed the evidence and all reasonable inferences from that evidence in the light most favorable to Quick. *See Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). Even so, the district court was required to draw inferences only to the extent they were "supportable by the record." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (quoting *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010)). Because a video recording existed of the whole encounter between Quick and Trooper Geddie, the district court was obligated to "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Quick argues that she stood "idly by," acted "materially similar to . . . other persons in the area," and complied with Trooper "Geddie's volley of directives . . . in an imminently reasonable fashion," but "[t]he videotape tells quite a different story," *Scott*, 550 U.S. at 379. Quick disobeyed at least seven orders from Trooper Geddie to return to her vehicle and defied him by meddling with Gaha's vehicle. Quick was aggressive, interrupted Trooper Geddie as he handcuffed Gaha and hampered Trooper Geddie's efforts to prepare the vehicle for towing and to restore the normal flow of traffic on the road. In contrast to Quick, P.P. was respectful,

9

cooperative, and deferential, which provides a plausible explanation for why Trooper Geddie allowed P.P. to remain in close proximity to Gaha, to accept items from her, and to retrieve her property from her vehicle.

Quick's complaint against Trooper Geddie for false arrest is barred by qualified immunity because he had arguable probable cause to arrest her for obstruction of a law enforcement officer, Ga. Code Ann. § 16-10-24(a). Section 16-20-24 provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." *Id.* Quick's "refusal to obey [Trooper Geddie's] repeated commands" to return to her vehicle obstructed or hindered Trooper Geddie's abilities to conclude his investigation, to prepare Gaha's vehicle for towing, and to restore the normal flow of traffic. *See West v. State*, 673 S.E.2d 558, 561–62 (Ga. Ct. App. 2009), *overruled on a diff. grd in Worthen v. State*, S18A1212, 2019 WL 2726961 (Ga. Jan. 22, 2019) (venue). And Quick's disobedience was knowing and willful in the light of her conduct at the scene and her later admission that she "chose not to obey" Trooper Geddie.

Quick argues that Trooper Geddie's order to leave "was unlawful in its scope," but we disagree. Trooper Geddie was entitled to "create a reasonable . . . scene perimeter . . . [and to] exclude [Quick] from a reasonable physical zone of an arrest within which there [was] a risk of physical contact between" himself and

10

Gaha. *See Woodward v. Gray*, 527 S.E.2d 595, 599 (Ga. Ct. App. 2000), *disapproved of on diff. grd in Stryker v. State*, 677 S.E.2d 680, 682 & n.1 (Ga. Ct. App. 2009). Quick cites no authority holding that an officer exceeds his authority by instructing a hostile and meddlesome mother of an arrestee to watch an investigation from a distance.

Quick also argues that clearly existing law established that her conduct did not constitute obstruction, but again we disagree. Quick's boisterous interruption of and interference in Trooper Geddie's ongoing investigation is readily distinguishable from cases in which a citizen was unreasonably arrested for obstruction when he requested with "a calm voice and demeanor" that officers relocate their vehicles for residents' convenience, *Reese v. Herbert*, 527 F.3d 1253, 1273–74 (11th Cir. 2008), and when a citizen "requested politely [that an officer pull his car forward a short distance past a driveway] . . ., without raised voice or threat, and . . . [did] not distract[] [the officer's] attention from a threatening situation," *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1333–34, 1138 (11th Cir. 2007). And Quick's conduct contrasts starkly with that of the citizen in *Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006), who suffered an unlawful arrest for obstruction after making a "simple inquiry" about an officer's presence near his home, *id.* at 767. In contrast to those cases, Quick inserted herself into an ongoing

11

investigation after being told to stay away, and then she disobeyed Trooper Geddie's order to clear the area.

Quick's complaint against Trooper Geddie for retaliatory arrest also was barred by qualified immunity. It was not clearly established at the time of Quick's arrest that an officer who had arguable probable cause nevertheless could be liable for acting with an unconstitutional motivation. Officers "are shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known,'" which turns on whether "the state of the law at the time of an incident provided fair warning to the [officers] that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks and citations omitted) (alteration adopted). When Trooper Geddie arrested Quick, the governing law provided that, "when an officer has arguable probable cause to arrest, he is entitled to qualified immunity . . . from First Amendment claims stemming from the arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 807 (2019). *See Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002). It was roughly two years later that the Supreme Court held in *Lozman v. City of Riviera Beach, Florida*, 138 S. Ct. 1945 (2018), that an arrestee may prevail on a civil claim for damages for a retaliatory arrest, even if there was probable cause for the arrest, if "the alleged constitutional violation was a but-for cause" of the arrest. *Id.* at 1952.

12

In any event, a reasonable finder of fact could not find on the record of Quick's arrest that, as she argues, her exercise of her right to gather information about the actions of a public official, *see Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000), was the "but-for" cause of her arrest.

Quick's complaints against Deputy Reyes for false arrest and retaliatory arrest based on his failure to intervene also are barred by qualified immunity. An officer who is present and in a position to intervene to prevent another officer from violating the constitutional rights of an arrestee can be held liable for his inaction. *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009). Because Trooper Geddie had arguable probable cause to arrest Quick, Deputy Reyes had no obligation to intervene.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Trooper Geddie and Deputy Reyes.