*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN HOLETON and PAULINE HOLETON,

Plaintiffs-Appellees,

v

CITY OF LIVONIA, LAURA M. TOY, JOHN R. PASTOR, BRANDON M. KRITZMAN, JAMES C. MCCANN, JOE LAURA, THOMAS A. ROBINSON, CITY OF LIVONIA CITY COUNCIL, CITY OF LIVONIA CITY COUNCIL'S INFRASTRUCTURE COMMUNITY TRANSIT COMMITTEE, and LIVONIA POLICE OFFICER JOHN DOE,

Defendants,

and

MAUREEN MILLER BROSNAN,

Defendant-Appellant.

FOR PUBLICATION
May 7, 2019
9:15 a.m.

No. 341624
Wayne Circuit Court
LC No. 14-000104-CZ

JOHN HOLETON and PAULINE HOLETON,

Plaintiffs-Appellees,

v

CITY OF LIVONIA, LAURA M. TOY, MAUREEN MILLER BROSNAN, JOHN R. PASTOR, BRANDON M. KRITZMAN, JAMES C. MCCANN, JOE LAURA, THOMAS A. ROBINSON, CITY OF LIVONIA CITY COUNCIL, CITY OF LIVONIA CITY COUNCIL'S INFRASTRUCTURE COMMUNITY TRANSIT COMMITTEE, and

No. 341847
Wayne Circuit Court
LC No. 14-000104-CZ

-1-

LIVONIA POLICE OFFICER JOHN DOE,

Defendants-Appellants.

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

These consolidated appeals originated in a claim that defendants violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*, or otherwise wrongfully interfered with the rights of plaintiffs, John and Pauline Holeton, to participate in meetings held by Livonia's city council. In Docket No. 341624, defendant Maureen Miller Brosnan appeals by right the trial court's order denying her motion for summary disposition of the Holetons' claim under 42 USC 1983, premised in part on her assertion of governmental immunity. In Docket No. 341847, defendants City of Livonia, City of Livonia City Council, City of Livonia City Council's Infrastructure Community Transit Committee (the Infrastructure Committee), Laura M. Toy, Maureen Miller Brosnan, John R. Pastor, Brandon M. Kritzman, James C. McCann, Joe Laura, Thomas A. Robinson, and an unknown police officer, appeal by leave granted the trial court's order denying in part their motion for summary disposition of the same claim. For the reasons more fully explained below, we reverse the trial court's decision to deny defendants' motions to dismiss the Holetons' claim under 42 USC 1983.

## I. BASIC FACTS

The individual defendants, other than the unknown police officer, were, or are, members of Livonia City Council. The Holetons are self-styled "community activists" who want to raise public awareness about the harms associated with DTE Energy's advanced metering infrastructure—otherwise known as "smart meters"—and do so in part by attending local governmental meetings, such as those held by the City Council. The Holetons sued defendants in January 2014 for violating the OMA. The case reached this Court, then our Supreme Court, and was eventually remanded for further proceedings. See *Holeton v Livonia*, unpublished per curiam opinion of the Court of Appeals, issued August 2, 2016 (Docket No. 321501).

In August 2017, the Holetons filed an amended complaint that stated additional claims, including a claim that Brosnan violated their rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States when she expelled Pauline from a meeting of the Infrastructure Committee held in March 2012. Brosnan ostensibly ordered Pauline to leave for violating an address-the-chair rule. Defendants each moved for summary disposition of the Holetons' claims in September 2017. Although the trial court dismissed many of the Holetons' claims, it allowed the Holetons' claims under 42 USC 1983 to proceed against Brosnan and the City Council.

These appeals followed.

## II. BROSNAN'S APPEAL IN DOCKET NO. 341624

In her appeal, Brosnan argues that the trial court erred when it denied her motion to dismiss the Holetons' claims under 42 USC 1983. Specifically, she argues that the trial court should have granted her motion because the Holetons failed to identify a federal constitutional or statutory right that she violated. In the alternative, she maintains that the Holetons failed to overcome her qualified immunity.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether Brosnan had qualified immunity for her actions. See *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007).

Congress provided a cause of action for persons who have been deprived of their rights by persons acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . [42 USC 1983.]

In order to establish a claim under 42 USC 1983, the plaintiff must plead and be able to prove that the defendant deprived him or her of a right secured by the Constitution of the United States or the laws of the United States and that the defendant was acting under color of state law when he or she deprived the plaintiff of the right. See *Morden*, 275 Mich App at 332.

In this case, the Holetons alleged that their participation in the public meetings implicated their rights under the First Amendment—their right to petition the government and their right to freely speak their views. They further alleged that Brosnan intentionally or with callous disregard for their rights caused Pauline to be removed from a meeting, which violated their rights to free speech and to petition the government. They claimed that Brosnan's actions deprived Pauline of her rights under the Fourteenth Amendment as well, and they suggested that she was deprived of liberty. They indicated that there was no probable cause to remove Pauline from the meeting held on March 19, 2012.

It is apparent that the Holetons' claim under 42 USC 1983—as alleged—arose solely from Brosnan's conduct at the meeting of the Infrastructure Committee held in March 2012. More specifically, they alleged that Brosnan's decision to order Pauline to leave the meeting amounted to a deprivation her federal constitutional rights.

In her motion for summary disposition, Brosnan properly noted that she was entitled to summary disposition on the grounds that the Holetons failed to show that Brosnan unlawfully deprived Pauline of her rights under the First Amendment or the Fourteenth Amendment. She

also identified grounds for concluding that she had qualified immunity and that the Holetons could not establish grounds for avoiding her qualified immunity. Because she filed a properly supported motion for summary disposition on those grounds, the Holetons had to respond and establish that there was, at the very least, a question of fact as to whether Brosnan violated an identifiable right, and that the right was so clearly established that no reasonable chairperson would have acted in the way that Brosnan did. See *Barnard Mfg*, 285 Mich App at 374-375.

In response, the Holetons argued that the address-the-chair rule was selectively applied and favored Livonia's citizens. They then argued that Pauline's expulsion violated her right to petition the committee. However, they did not discuss: the relevant law, whether the evidence showed that Pauline actually violated the address-the-chair rule, the reasonableness of the rule, or the reasonableness of Brosnan's decision to ask Pauline to leave in response to Pauline's purported failure to comply with the rule and her behavior at the podium. Rather, the Holetons appeared to argue that expelling a member of the public for violating a rule was per se a violation of that person's First Amendment rights to speak and petition because expulsion can only be done when someone disturbs the peace under the OMA. They similarly argued that the requirements of the OMA were clear, and, as such, Brosnan did not have qualified immunity. They also suggested that acts by the committee members at past meetings, such as interrupting the Holetons and making dismissive remarks, showed that Brosnan and the other council members were motivated by a desire to violate Pauline's speech and petition rights.

It is well settled that the First Amendment prevents government from interfering with the speech of private individuals on the basis of the message expressed. See *Turner Broadcasting Sys, Inc v Fed Communications Comm*, 512 US 622, 641; 114 S Ct 2445; 129 L Ed 2d 497 (1994). The amendment does not, however, prevent governments from enacting content-neutral restrictions that impose incidental limitations on speech. *Id.* at 662. That is so because the First Amendment does not protect the right to publicize one's views whenever, however, and wherever one pleases. See *Wood v Moss*, 572 US 744, 757; 134 S Ct 2056; 188 L Ed 2d 1039 (2014). Additionally, as Brosnan correctly notes on appeal, the committee meeting at issue was a limited public forum. See *Perry Ed Assn v Perry Local Educators' Assn*, 460 US 37, 45; 103 S Ct 948; 74 L Ed 2d 794 (1983); *Reza v Pearce*, 806 F3d 497, 502-503 (CA 9, 2015) (stating that city council meetings are dedicated solely to the discussion of certain topics and, therefore, are a limited public forum); *Rowe v City of Cocoa*, 358 F3d 800, 803 (CA 11, 2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."). For limited public fora, the state may impose reasonable regulations on speech so as to reserve the forum for its intended purposes, as long as the regulation does not suppress expression on the basis of the speaker's view. *Perry Ed Assn*, 460 US at 45-46. The First Amendment also prohibits government officials from punishing individuals for engaging in protected speech, see *Lozman v Riviera Beach*, ___ US ___, ___; 138 S Ct 1945, 1949; 201 L Ed 2d 342 (2018), and secures the right to petition the government for redress of grievances, see *BE & K Constr v Nat'l Labor Relations Bd*, 536 US 516, 524; 122 S Ct 2390; 153 L Ed 2d 499 (2002). These protections apply to the states through the Fourteenth Amendment. See *Mills v Alabama*, 384 US 214, 218; 86 S Ct 1434; 16 L Ed 2d 484 (1966).

In this case, the Holetons did not allege or present any evidence that Brosnan implemented an address-the-chair rule in order to curtail anyone's speech on the basis of the

content or viewpoint expressed. They also did not allege or present evidence that the rule was unreasonable for the forum. See *Perry Ed Assn*, 460 US at 45. They did not allege or present any evidence that they had actually been prevented from speaking at a previous meeting or that the implementation of the rule denied them the right to petition the committee at the meeting in March 2012.

It is undisputed that the Holetons had been able to speak at previous meetings. Similarly, the evidence showed that Pauline was invited to express her views at the committee's meeting in March 2012 and was given the opportunity to express her views at that meeting. The Holetons failed to allege or present evidence that Brosnan or the council members engaged in a pattern or plan of harassment and intimidation that prevented them from exercising their First Amendment rights premised on the content of their speech or their viewpoint. See *Lozman*, ___ US at ___; 138 S Ct at 1954-1955. Instead, the Holetons premised their claim under 42 USC 1983 on the fact that Brosnan took steps to end Pauline's speech and petition activities for failing to comply with an address-the-chair rule; they suggest that Brosnan could not do so absent a breach of the peace by Pauline. Stated another way, the Holetons did not allege or argue that Brosnan or the council had formulated a plan to retaliate against the Holetons on the basis of their previously expressed viewpoints. See *id.* They relied solely on Brosnan's decision to implement an address-the-chair rule and enforce that rule.

The evidence showed that the City Council scheduled the meeting to address citizen concerns about smart meters, which previous meetings of the City Council had shown to be a contentious issue. By requiring commentary to be directed to the chair, Brosnan ensured that commentators would not be inciting other attendees to heckle or debate the commentator, or otherwise disrupt the orderly progress of the commentary. The City Council had a significant governmental interest in conducting orderly and efficient meetings. See *Rowe*, 358 F3d at 802-803. The rule was on its face reasonably calculated to ensure the orderly participation of the community members who wished to express their views without targeting the content or their viewpoint. Accordingly, the rule was reasonable and consistent with the requirements of the First Amendment for limited public fora. See *Perry Ed Assn*, 460 US at 45-46.

As noted, the address-the-chair rule did not by itself target the speaker's viewpoint and did not prevent anyone from petitioning the Infrastructure Committee. Brosnan also provided reasonable notice of the rule by explaining the nature of the rule before the meeting of the Infrastructure Committee. The mere existence of the rule—without regard to the propriety of its promulgation—did not violate the Holetons' First Amendment rights or their right to due process under the Fourteenth Amendment. Additionally, although removing Pauline for a violation of the rule might have amounted to a violation of Michigan's OMA, see MCL 15.263(6), a violation of the OMA does not itself establish that Brosnan's actions also deprived Pauline of her rights under the First and Fourteenth Amendments. See, e.g., *Davis v Scherer*, 468 US 183, 194-196; 104 S Ct 3012; 82 L Ed 2d 139 (1984) (rejecting the contention that a violation of a related state statute or regulation necessarily renders the state actor's actions unreasonable for purposes of determining qualified immunity). Indeed, because a council meeting is a limited public forum, the council can promulgate rules limiting the content and extent of the commentary and can provide for the expulsion of persons who disrupt the orderly progress of the meeting. See *Eichenlaub v Indiana Twp*, 385 F3d 274, 281 (CA 3, 2004) (upholding removal of a member of the public where the evidence showed that the speaker was repetitive and truculent and

explaining that restricting such behavior prevented the speaker from hijacking the proceedings, which would infringe the First Amendment rights of other would-be participants); see also *White v Norwalk*, 900 F2d 1421, 1425-1426 (CA 9, 1990) (holding that an ordinance was not facially invalid under the First Amendment because it allowed the moderator of a city council's meeting to eject an audience member for disruptions short of a breach of the peace). It is also not a violation of the Equal Protection Clause of the Fourteenth Amendment for a municipality to favor commentary by its own citizens over noncitizens, as long as the rule does not discriminate on the basis of speaker's view. See *Rowe*, 358 F3d at 803 ("It is reasonable for a city to restrict the individuals who may speak at meetings to those individuals who have a direct stake in the business of the city—e.g., citizens of the city or those who receive a utility service from the city—so long as that restriction is not based on the speaker's viewpoint.").

In this case, the evidence showed that Brosnan gave Pauline a reasonable opportunity to address the committee at the meeting. It is true that Brosnan immediately admonished Pauline to address the chair and referred to previous encounters, but the video evidence showed that Brosnan's remarks were occasioned by the fact that Pauline immediately began to address the audience rather than the chair. And Pauline did so after another commentator had resorted to personal attacks on the DTE representatives and a general increase in the tensions at the meeting. Nevertheless, there was no evidence that Brosnan selectively applied the address-the-chair rule on the basis of the speaker's viewpoint, or enforced it without warning or in a capricious or arbitrary manner. Indeed, the evidence showed that she applied the rule to several previous speakers from both Livonia and outside communities. The evidence also demonstrated that Brosnan twice admonished Pauline to comply with the rule but still provided her with an opportunity to start over. The evidence showed that Brosnan allowed John Holeton to speak without interruption for several minutes after Pauline left the meeting, which belies the notion that Brosnan used the rule as a pretext to discriminate against the Holetons on the basis of their previously expressed views. The video also showed that Pauline was dismissive and demeaning toward Brosnan and the representative from DTE Energy. Brosnan's efforts to moderate the meeting were reasonable given the limited forum. See *Perry Ed Assn*, 460 US at 45-46. The Holetons failed to establish that Brosnan violated Pauline's constitutional rights by admonishing her to follow the rule and then asking her to leave when she was unwilling to comply with the rule. On this record, no reasonable jury could find that Brosnan implemented the address-the-chair rule to retaliate against the Holetons or that she otherwise deprived them of their rights by enforcing the rule. See MCR 2.116(C)(10); *Quinto v Cross & Peters Co*, 451 Mich 358, 367, 547 NW2d 314 (1996) (recognizing that the nonmoving party must present evidence sufficient "to permit a reasonable jury" to find in favor of the nonmoving party).

The trial court also erred when it refused to grant Brosnan's motion on the basis of qualified immunity. An official has qualified immunity from suits under 42 USC 1983 when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v Hughes*, ___ US ___, ___; 138 S Ct 1148, 1152; 200 L Ed 2d 449 (2018) (quotation marks and citation omitted). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565

(2009) (quotation marks and citation omitted). Before allowing a claim to proceed, courts must determine that the plaintiff has established two elements that defeat qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. [*Id.* at 232 (quotation marks and citations omitted).]

The focus of the inquiry is on whether the official had "fair notice that her conduct was unlawful;" and, for that reason, the reasonableness of the act must be judged against the backdrop of the law at the time of the conduct. *Kisela*, ___ US at ___; 138 S Ct at 1152 (quotation marks and citations omitted). The allegations and facts must show that it would have been clear to a reasonable official in the defendant's position that his or her conduct was unlawful under the situation that he or she confronted. *Wood*, 572 US at 758. The Supreme Court of the United States has also repeatedly admonished lower courts "not to define clearly established law at a high level of generality." *Kisela*, ___ US at ___; 138 S Ct at 1152 (quotation marks and citation omitted). Although there need not be a case directly on point for a right to be clearly established, existing precedent must have placed the constitutional question beyond debate. *Id.* It was, therefore, not sufficient for the Holetons to assert that it was clearly established that the First Amendment protects speech and the right to petition government, or that the Fourteenth Amendment ensures the right to due process. In order to survive summary disposition of the claim alleged in this case, the Holetons had to show that it was clearly established that the First Amendment or Fourteenth Amendment prevented a committee chair from enforcing an otherwise reasonable and viewpoint-neutral procedural rule—the address-the-chair rule—by expelling a person who does not comply with the rule under similar facts. This, they did not do.

The Holetons relied solely on the fact that the OMA prohibited expulsion absent a breach of the peace at the meeting. The requirements of the OMA do not establish the parameters of the rights protected under the First and Fourteenth Amendments. See *Davis*, 468 US at 194-196. And it has been held that an ordinance that allows expulsion short of a breach of the peace is constitutional. See *White*, 900 F2d at 1425-1426. Under the state of the law applicable to limited public fora, a reasonable chairperson might conclude that, consistent with the First and Fourteenth Amendments, he or she could properly enforce an otherwise reasonable and viewpoint-neutral rule by expelling a member of the audience who repeatedly violated the rule and was thereby disrupting the orderly progress of the meeting. This is especially true when—as in this case—the chairperson warned the speaker and gave her the opportunity to comply with the rule. No reasonable jury could find that a reasonable chairperson in Brosnan's shoes would have understood that she was violating Pauline's First Amendment rights by implementing and enforcing the address-the-chair rule under those circumstances. See *Kisela*, ___ US at ___; 138 S Ct at 1153. The Holetons failed to establish that Brosnan was not entitled to qualified immunity for resorting to expulsion rather than some other less drastic remedy for the rule violation.

As Brosnan correctly notes on appeal, it was unclear from the amended complaint and arguments made before the trial court how Brosnan purportedly violated the Holetons' rights

under the Fourteenth Amendment. The First Amendment applies to state actors through the Fourteenth Amendment. As such, the Holetons' claim under 42 USC 1983 could be viewed as a First Amendment claim. However, the Holetons failed to establish a violation of their First Amendment rights. They also asserted that Brosnan and the unnamed officer deprived Pauline of liberty without due process of law. But they did not clarify the nature of the claim in response to Brosnan's motion for summary disposition. They did not identify the specific right violated and did not show that a reasonable chairperson in Brosnan's position would have known that her acts or omissions violated a clearly established right under the Fourteenth Amendment. See *Kisela*, ___ US at ___; 138 S Ct at 1153.

Once Brosnan made a properly supported motion for summary disposition of the Holetons' claim under the Fourteenth Amendment, the Holetons were obligated to demonstrate the nature of the right at issue and that qualified immunity did not apply. It was not enough that a state actor's actions might have had some conceivable effect on life, liberty, or property. See *Moore v Detroit*, 128 Mich App 491, 501-502; 340 NW2d 640 (1983). It was undisputed that Pauline had notice of the rule, was admonished to follow the rule, and failed to do so. She had notice and an opportunity to comply before being expelled. That process may have been sufficient under the circumstances. See *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004). There was also no evidence that anyone physically handled Pauline or otherwise inhibited her freedom of movement. On this record, the Holetons failed to identify an independent violation of a right guaranteed under the Fourteenth Amendment, which could support a claim under 42 USC 1983. Accordingly, the trial court should also have dismissed the Holetons' claim under 42 USC 1983 to the extent that they relied on a deprivation of a right other than the rights guaranteed under the First Amendment.

### III. THE CITY COUNCIL'S APPEAL IN DOCKET NO. 341847

The City Council also argues on appeal that the trial court erred when it denied its motion for summary disposition of the Holetons' claim under 42 USC 1983. The City Council argues that the trial court erred to the extent that it denied its motion because the City Council could be held liable for Brosnan's acts under a theory of respondeat superior and erred because the City Council is not an entity that is capable of being sued.

It is well settled that a municipality is a person that can be sued under 42 USC 1983 for a deprivation of rights protected by the Constitution of the United States or a federal statute. See *Johnson*, 502 Mich at 762. However, it is equally clear that a plaintiff cannot predicate liability on a respondeat superior theory. *Id.* at 763. Rather, the plaintiff must plead and be able to prove that the municipality's policy or custom directly led to the deprivation of the federal constitutional or statutory right at issue. *Id.* at 762. "A constitutional violation is attributable to a municipality if 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Id.* at 762, quoting *Monell v Dep't of Social Servs of the City of New York*, 436 US 658, 690; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

As discussed in Brosnan's appeal, the Holetons failed to show that Brosnan's actions deprived them of a right protected under the First or Fourteenth Amendment. Brosnan's address-the-chair rule was reasonable and viewpoint neutral, as permitted for limited public fora. See

*Perry Ed Assn*, 460 US at 45-46. Moreover, Brosnan could ensure the orderly progress of the meeting by enforcing the rule, see *Rowe*, 358 F3d at 803, and expulsion was not a constitutionally suspect remedy, see *White*, 900 F2d at 1425-1426. The Holetons further could not rely on a violation of the OMA to establish a violation of right protected by the First or Fourteenth Amendments. See *Davis*, 468 US at 194-196. On the record before the trial court, Brosnan's actions were permissible under the First and Fourteenth Amendments. The Holetons failed to establish a question of fact for the jury as to whether Brosnan's implementation and enforcement of the address-the-chair rule violated their constitutional rights. As such, even if Brosnan acted pursuant to a policy or procedure implemented by Livonia, a reasonable jury could not find that the policy caused a deprivation of rights. See *Johnson*, 502 Mich at 762. For these reasons, the trial court should have dismissed the Holetons' claim under 42 USC 1983 as to all defendants. See *Barnard Mfg*, 285 Mich App at 374-375.

## IV. CONCLUSION

Because the Holetons failed to identify a deprivation of their rights under the First and Fourteenth Amendments to the Constitution of the United States, the trial court should have dismissed their claims under 42 USC 1983 as to all defendants. For that reason, we reverse the trial court's decision to deny the motions for summary disposition of the Holetons' claims under 42 USC 1983 in both dockets, and remand this case for entry of an order dismissing the claims.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because this appeal involved issues of importance to the general public, we order that none of the parties may tax their costs. See MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford