# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2022

Lyle W. Cayce
Clerk

No. 21-30440

Cynthia Payton,

*Plaintiff—Appellant*,

*versus*

Town of Maringouin,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-563

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant Cynthia Payton appeals the district court's order granting Defendant-Appellee Town of Maringouin's ("the Town") motion for summary judgment. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30440

## I.  Background

Beginning in August 2015, trucks and trailers operating on behalf of RJ's Transportation ("RJ's") began parking close to Payton's house. Payton believed that the trucks were hauling dangerous substances, so she complained to public officials in the Town. Payton alleged that after submitting these complaints, RJ's employees began stalking and harassing her. She reported the harassment to the Iberville Parish Sheriff's Office, which ignored her. She then attempted to file charges with the Justice of the Peace for the Parish of Iberville, Eugene Simpson, against the truck drivers who had allegedly stalked and harassed her. Justice of the Peace Simpson told Payton that she could not bring any charges without the approval of the Chief of Police, Hosea Anderson ("Chief Anderson").

On September 27, 2017, Payton sent a letter to RJ's about the operation of its trucks and the alleged stalking and harassment by its truck drivers. On October 17, 2021, having had all her complaints ignored by local officials and RJ's, Payton complained to District Attorney Ricky Ward ("DA Ward") via email. Her email explained that she attempted to file charges against her alleged harassers, but that Simpson said she could not do so without Chief Anderson's approval. She also alleged that Chief Anderson was harassing her. DA Ward did not respond to Payton's email.

Later that day, Justice of the Peace Simpson attended a meeting at the Iberville Parish Sheriff's Office Maringouin Substation, during which Chief Anderson and RJ's truck drivers—Dwayne Bourgeois, Patrick Ventress, and Edward James—executed affidavits stating that Payton had criminally defamed them by sending the September 27, 2017, letter to RJ's. After conferring with the affiants, Justice of the Peace Simpson signed warrants for Payton's arrest for criminal defamation in violation of La. Rev. Stat.

2

No. 21-30440

ANN. § 14:47.[1] Shortly thereafter, Officer Terrance Davis and an unidentified Iberville Parish Sheriff's deputy went to Payton's home and arrested her. She was taken to West Baton Rouge Parish Jail and was released the next day. DA Ward subsequently refused all charges against Payton.

Payton filed suit on May 18, 2018, and amended her complaint on August 15, 2018. Pursuant to 42 U.S.C. § 1983, she asserted several claims against Justice of the Peace Simpson, the Town and its law enforcement officers, and RJ's Transportation and its employee, Ventress, including a First Amendment retaliation claim and a Fourth Amendment claim connected to malicious prosecution.[2] The district court granted Justice of the Peace Simpson's motion to dismiss on grounds that Payton's claims against him were barred by the doctrine of judicial immunity.

After discovery, three separate motions for summary judgment were filed by the Town, Chief Anderson and Officer Davis, and RJ's and Ventress. In a single order, the district court granted those motions for summary judgment with respect to Payton's federal law claims. Payton timely

---

[1] Louisiana's criminal defamation statute provides:

Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or
(2) To expose the memory of one deceased to hatred, contempt, or ridicule; or
(3) To injure any person, corporation, or association of persons in his or their business or occupation.
Whoever commits the crime of defamation shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.

[2] Payton also asserted several state law claims, but those do not remain on appeal.

appealed. On February 9, 2022, this court granted Payton's unopposed motion for partial dismissal of Chief Anderson, Sheriff Brett Stassi, Deputy Sheriff Shaderick Jones, Officer Davis, drivers James, Bourgeois, Ventress, RJ's, and Justice of the Peace Simpson as Defendants-Appellees. Thus, only Payton's claims against the Town remain on appeal.

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Summary judgment is appropriate if the record evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.    DISCUSSION

### a. *First Amendment retaliation claim*

The district court granted summary judgment dismissing Payton's First Amendment retaliation claim on grounds that she failed to establish the causation element. This court has explained that "[t]o prevail on a First Amendment retaliation claim, [a] [p]laintiff must demonstrate that (1) [s]he was engaged in constitutionally protected activity, (2) the officers' action caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against [the] [p]laintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017). As to the second element, the alleged injury that Payton suffered is her arrest. The district court held that Chief Anderson's statement and affidavit could not support a finding of probable cause for Payton's arrest because the Louisiana Supreme Court held that LA. REV. STAT. ANN. § 14:47 is "unconstitutional insofar as [it] attempt[s] to punish public expression and publication concerning public officials" and

Anderson is a public official. *See State v. Snyder*, 277 So.2d 660, 668 (La. 1972). It nonetheless reasoned that the causation element of her First Amendment retaliation claim was not satisfied because Payton was ultimately arrested based on the statements and affidavits of three private citizens, thus it was not Chief Anderson's actions that caused her to suffer the alleged injury. We agree.

Specifically, Simpson wrote an affidavit based on Ventress's voluntary statement, which explained that Payton mailed a letter to his job with false statements about him, including that he was a gang member, that he harassed her on her job, that he followed her from her job, that he was on public assistance, and that he was being paid to harass and intimidate her. Because a reasonable juror would conclude that those statements were false, the district court concluded that there was probable cause to arrest Payton for criminally defaming Ventress. The parties do not dispute the existence of probable cause on appeal. Because Payton would have been arrested regardless of Anderson's actions, the district court properly held that her First Amendment retaliation claim fails for lack of causation.

Payton argues that her case is analogous to *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), where the Supreme Court held that the presence of probable cause did not bar a claim of retaliatory arrest where "high-level city policymakers adopted a plan to retaliate against [the petitioner] for protected speech and then ordered his arrest when he attempted to make remarks during the public-comment portion of a city council meeting." *Id.* at 1949, 1955. In that case, the petitioner, Lozman, was the resident of a floating home in the city-owned marina and an outspoken critic of the city's plan to use its eminent domain power to seize waterfront homes for private development. *Id.* at 1949. After he filed a lawsuit alleging that the city's approval of an agreement with developers violated Florida's open-meetings laws, the city council held a closed-door session in which a

councilmember suggested that the city use its resources to "intimidate" Lozman and other city council members agreed. *Id.* Five months later, while Lozman was giving remarks during a public city council meeting, the same councilmember had Lozman arrested. *Id.* at 1949–50. Lozman filed a § 1983 suit against the city, and the jury returned a verdict against him, which the Eleventh Circuit affirmed on grounds that the existence of probable cause defeated a First Amendment claim for retaliatory arrest. *Id.* The Supreme Court vacated, reasoning that Lozman's was a unique case where he need not prove the absence of probable cause because he claimed that his arrest was ordered pursuant to an official policy in retaliation for his open-meetings lawsuit and his prior public criticism of city officials. *Id.* at 1951, 1954–55.

Payton contends that the existence of probable cause should not bar her First Amendment retaliation claim because, as in *Lozman*, Anderson "confected a policy of retaliating against Payton's speech," and that "policy" is attributable to the Town given that Anderson is its final policymaker.[3] *Lozman* is distinguishable, however. As the Supreme Court emphasized, *Lozman* involved a 'unique class of retaliatory arrest claims" where the arrest was part of "an 'official municipal policy' of intimidation" against the petitioner "for his criticisms of city officials and his open-meetings lawsuit." *Id.* at 1954. Payton fails to show that her claims fall within *Lozman*'s unique class. Accordingly, we hold that the district court did not err in granting summary judgment dismissing Payton's First Amendment retaliation claim.

---

[3] By pointing out that neither party disputes that Anderson was the final policymaker for the Town, Payton seems to attempt to invoke the "single incident exception," under which "[a] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000)). This exception is "extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations omitted).

b. *Fourth Amendment for malicious prosecution*

The district court held that Payton had no viable claim for malicious prosecution because the Fifth Circuit does not recognize a freestanding claim for malicious prosecution absent a violation of one's constitutional rights.[4] Payton argues that the district court erred in dismissing her Fourth Amendment claim connected to malicious prosecution because Anderson's retaliation against her for criticizing him supports her claim. We disagree.

Regarding malicious prosecution claims, "this [c]ourt has held that although there is no 'freestanding constitutional right to be free from malicious prosecution,' '[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example.'" *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc)). In *Winfrey*, we held that the plaintiff had presented a cognizable Fourth Amendment claim because he was arrested pursuant to a warrant whose affidavit did not establish probable cause, and the criminal proceedings ended in his favor. *Id.* at 492–93, 495. The Supreme Court recently recognized a Fourth Amendment claim under § 1983 for malicious prosecution in *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). The Court explained that "[t]o maintain [a] Fourth Amendment claim under § 1983, a plaintiff . . . must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution." *Id.* It clarified however, that "a plaintiff need only show that his prosecution ended without a

---

[4] Payton's Statement of Issue Presented for Review describes only her First Amendment retaliation claim, but later in the brief, she dedicates a single paragraph to her Fourth Amendment claim connected to malicious prosecution. To the extent this claim is preserved on appeal, we address it for the sake of completion.

conviction," not that it "ended with some affirmative indication of innocence." *Id.* at 1335, 1341.

Here, although Payton's prosecution ended without a conviction, that is, DA Ward refused all the charges against her, Payton's malicious prosecution claim still fails because, unlike in *Winfrey*, the affidavits supporting the warrant for her arrest established probable cause. Accordingly, the district court did not err in granting summary judgment dismissing Payton's Fourth Amendment malicious prosecution claim.

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.